557 A.2d 256

BALTIMORE HERITAGE, INC. et al.

v.

MAYOR AND CITY COUNCIL OF BALTIMORE et al.

No. 15, Sept. Term, 1989.

Court of Appeals of Maryland.

May 8, 1989.

John C. Murphy, Baltimore, for appellants.

Shale D. Stiller (Diana G. Motz, Avery Aisenstark, Frank, Bernstein, Conaway & Goldman, all on brief), Sandra R. Gutman, Asst. City Sol. (Neal M. Janey, City Sol., Richard K. Jacobsen, Chief Sol., all on brief) Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

PER CURIAM.

This appeal is from a dismissal for lack of standing by the Circuit Court for Baltimore City of an appeal to it from a dismissal for lack of jurisdiction by the Board of Municipal and Zoning Appeals (BMZA) of an appeal to it from the issuance by the Baltimore City Department of Housing and Community Development (HCD) of a permit to raze the "McCormick Building" at 414 Light Street in Baltimore City. We approve the BMZA action.

On December 2, 1988, HCD, acting through the Director of its Construction and Buildings Inspection Division, issued to one of the appellees, Rouse–Teachers Properties, Inc. (Rouse), then named McCormick Properties, Inc., permit No. B17668 (the Permit) to raze the McCormick Building by dismantling.[1] Under the heading "Scope of Authority" the Permit in part reads, "This property not to be used as a parking lot except by ord[inance] of the Mayor & City Council of Balt[imore] City[.]" The same language was also inserted by typewriting in the application for a permit.

---

1. The municipal corporation, Mayor and City Council of Baltimore, is also an appellee.

The application form for a razing permit contains a pre-printed section designed to reflect whether and when the application is "approved by" or "disapproved" by various municipal departments. The printed list of municipal departments does not include Zoning Administration, but the last printed entry in the departmental list is "Others." The subject application reflects that on December 1, 1988, the Zoning Administrator, David C. Tanner, signed in the "approved by" column for the "Others" category.

Baltimore Heritage, Inc. and Donna Beth Joy Shapiro (Appellants) appealed to BMZA the issuance of the Permit.[2] At BMZA's request Rouse filed with BMZA a "Plot Plat of Proposed Use" of the McCormick Building site. The plat shows a ground level, open air, parking lot of 240 spaces with perimeter landscaping.

One of the grounds for the appeal to BMZA was that the McCormick Building site "is to be used for a parking lot and the City Council has not authorized this use pursuant to Section 9.0–3c" of the Baltimore City Zoning Ordinance (1987) (the Zoning Ordinance). Section 9.0-3a.1 delineates a parking lot district in central Baltimore City. The McCormick Building site lies within the delineated area. Section 9.0–3c provides:

"In the parking lot district, no parking lot shall be used nor shall any building be razed so as to permit the use of the land as a parking lot unless by authority of an ordinance approved by the Mayor and City Council of Baltimore. This requirement is to permit the Mayor and City Council of Baltimore, during its consideration of any such proposed ordinance, to consider and evaluate (1) the need and necessity for the parking lot, (2) the proposed appearance of the parking lot, and (3) possible aesthetic damage to the area surrounding the parking lot with

---

2. Appellants seek to preserve architectural or historical values or both. The McCormick Building is not on any list promulgated by any governmental body of architecturally significant or historic structures.

particular respect to the proposed removal of historic or aesthetically valuable properties."

Section 9.0–3b in part provides:

"However, this section shall not apply to parking lots which are included in approved planned developments. Further, nothing in this section shall be interpreted to apply to any person seeking to establish a temporary parking lot within the boundaries of the Inner Harbor Renewal Areas and other Urban Renewal Areas, approved by ordinance of the Mayor and City Council. Said person may establish temporary parking lots within the boundaries of such Renewal Areas for a period not to exceed 18 months."

Before hearing Appellants' appeal from the Permit issuance, BMZA dismissed the appeal for lack of jurisdiction. It appears that BMZA then referred Appellants' filing to the Commissioner of HCD (the Commissioner) with the suggestion that it be treated as a complaint under § 123.2 of the Baltimore City Building Code (1987) (the Building Code). We are advised that the Commissioner, after conducting a hearing, upheld the Permit. That administrative review process under the Building Code is not involved in the proceedings now before us.

Appellants appealed BMZA's dismissal to the Circuit Court for Baltimore City. They alleged that "[i]n approving the demolition permit, the Zoning Administrator failed to follow the Zoning Ordinance...." They contended that the Zoning Ordinance prohibited any "demolition of a structure for a parking lot within the parking district without the passage of an ordinance" and, alternatively, that the Zoning Ordinance prohibited any demolition "for a temporary parking lot where the applicant states its intention that the parking lot use will exceed 18 months." The petition of appeal included an application for an injunction "against the demolition of the McCormick Building while the appeal is pending." That application was resolved by Rouse's agreement to withhold demolition pending the outcome of the circuit court hearing. At that hearing the issues were

limited to standing and jurisdiction. The circuit court concluded only that neither Appellant had standing and dismissed the appeal.

From that judgment Appellants appealed to the Court of Special Appeals where they also sought an injunction against demolition pending appeal. The intermediate appellate court denied that application, and Appellants petitioned this Court for review of that denial pursuant to Maryland Rule 8–425(e). We issued the writ of certiorari on our own motion, and by order of April 12, 1989, stayed demolition of the McCormick Building pending disposition of the appeal in this Court.

■ We agree with the circuit court that BMZA's decision should not be disturbed, but not with the circuit court's rationale. BMZA never ruled on Appellants' standing and did not even receive any evidence on that subject. BMZA "decided a point of law, and that is all it decided. That point of law is all that should have been considered by the circuit court[.]" *Washington Nat'l Arena v. Comptroller*, 308 Md. 370, 380, 519 A.2d 1277, 1282 (1987). Here BMZA made no findings of direct or inferential fact concerning standing. Under these circumstances there is particular applicability of the general rule that "in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." *United Steelworkers v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62, 69 (1984). The circuit court should have affirmed the BMZA decision because the point of law on which BMZA dismissed the appeal, namely, its lack of jurisdiction, was correctly applied by BMZA.

The Permit was issued pursuant to the Building Code, and there is no law which Appellants have brought to our attention or which our research discloses conferring jurisdiction on BMZA in an appeal from the issuance of a permit to raze a structure. Section 105.4.1 of the Building Code

provides that "[n]o person ... shall engage in the razing ... of any building ... without first obtaining a license from the building official." Section 111.1 of the Building Code provides that "[a] permit issued by the building official is required before any person may ... raze ... a building...." "Building official" is defined in § 109.1 of the Building Code to be the Commissioner "or a duly authorized representative of the Commissioner." Section 123.0, entitled "General Requirements for Routine and Procedure," provides a departmental administrative process under the Building Code. As we have previously noted, any proceedings invoking that process are not involved in the instant action.

Appellants rest their invocation of BMZA jurisdiction on § 11.0–3b.4 of the Zoning Ordinance which confers on BMZA jurisdiction and authority "to hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Zoning Administrator under this ordinance[.]" This provision of the Zoning Ordinance is Baltimore City's implementation of that provision of the State Enabling Act which reads:

"The board of zoning appeals shall have the following powers:

"(1) To hear and decide appeals where it is alleged there is an error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto."

Md.Code (1957, 1988 Repl.Vol.), Art. 66B, Title, "Zoning and Planning," Subtitle 2, "Zoning in Baltimore City," § 2.08(c)(1). Thus, in Baltimore City the "administrative official" is the Zoning Administrator.

■ It is Appellants' contention that the application for the Permit reflects approval by the Zoning Administrator, an approval which they contend was unauthorized because an ordinance is required by § 9.0–3c of the Zoning Ordi-

nance.[3]  On objection by the Appellants, the circuit court excluded an affidavit made by the Zoning Administrator, and proffered by the appellees, in which Mr. Tanner undertook to explain why his signature appeared on the application.  We need not decide whether the circuit court erred, as Rouse urges, in rejecting this proffer.  We shall assume that the Zoning Administrator purported to act under § 11.0–2c.1 of the Zoning Ordinance which provides:

"c.  *Zoning Authorizations.*

"1.  *Authorizations Required.*  Except as hereinafter provided, no permit pertaining to the use of land or structures shall be issued by any officer, department, or employee of the City unless the application for such permit has been examined by the office of the Zoning Administrator and has affixed to it the authorization of the Zoning Administrator indicating that the proposed structure or use complies with all the provisions of this ordinance.  Where no other permit is required for the use of land, this zoning authorization shall be construed as the permit to so use the land.  A building permit or occupancy certificate issued in conflict with the provisions of this ordinance shall be null and void."

The zoning authorization described above concerns only a "permit pertaining to the use of land or structures...." "Use" is a very broad concept in zoning law but we hold that, in the context of § 11.0–2c.1, it does not include the razing of a building.  Quoting Yokley, *Zoning Law and Practice* § 2–1, at 16 (1978), the Court in *Pleasureland Museum, Inc. v. Dailey,* 422 N.E.2d 754, 755 (Ind.App.1981) said that "[t]he term 'use,' as employed in the context of zoning, is a word of art denoting 'the purpose for which the building is designed, arranged or intended, or for which it is occupied or maintained.' "  In § 11.0–2c.1 "use" is employed

---

**3.**  One of appellees' arguments on the merits is that a temporary parking lot use of the site is permitted under the exception in § 9.0–3b.

in the same sense as in Zoning Ordinance § 2.0–1, "Interpretation and Application," subsection e, *"Specific Use Governs,"* which reads: "The use set forth specifically shall govern in the interpretation and application of a use which is set forth both specifically and in a general category." Thus, we need not know why Mr. Tanner signed the application for the Permit. Because the Permit is to raze a building, it is not a § 11.0–2c.1 zoning authorization. It is not, therefore, an "order, requirement, decision, or determination made by the Zoning Administrator under this ordinance[,]" within the meaning of § 11.0–3b.4 which confers jurisdiction on BMZA.

Appellants further contend that the Permit issuance was a land use decision because the demolition will be for the purpose, at least relatively near term, of using the site for a parking lot. But the Permit does not authorize use of the site as a parking lot and, indeed, declares that an ordinance is required before that use can be made of the site.

Essentially, Appellants' position is that a purpose of § 9.0–3 of the Zoning Ordinance is to require City Council consideration of possible historical and architectural significance before demolition, for parking lot purposes, of a building in the area described in § 9.0–3a and that that purpose will be defeated unless the demolition permit is withheld. Phrased another way, a piecemeal process which looks at demolition in isolation, without considering the use to be made of the property after demolition, defeats the legislative intent. Whether and to what extent the Commissioner is bound by or required to consider the purposes and policies of § 9.0–3 in issuing a demolition permit are issues which are not before us. It is clear that the Permit was not issued by the Zoning Administrator and that § 11.0–3b.4, on which Appellants rely for BMZA jurisdiction, is limited to determinations made by the Zoning Administrator.

We intimate no opinion on the proper interpretation or application of § 9.0–3 to the instant matter or on the proper procedure whereby alleged violations of that section, if applicable, are to be enforced.

Our mandate shall issue immediately. A consequence of that mandate is that the stay entered by this Court on April 12, 1989, will expire by its terms.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF A JUDGMENT AFFIRMING THE DISMISSAL BY THE BOARD OF MUNICIPAL AND ZONING APPEALS. MANDATE TO ISSUE FORTHWITH. COSTS TO BE PAID BY THE APPELLANTS.