558 A.2d 1219

HARFORD COUNTY, Maryland et al. and
Hanson Partnership

v.

EDGEWATER PARTNERSHIP.

No. 115, Sept. Term, 1988.

Court of Appeals of Maryland.

June 16, 1989.

**390**

George A. Nilson, Kurt J. Fischer, Piper & Marbury, Baltimore, William D. Hooper, Jr., Lentz, Hooper, Jacobs & Blevins, P.A., on brief, Bel Air, for Hanson Partnership.

Victor K. Butanis, County Atty., Lester H. Feinberg, Council Atty., Jacqueline A. Moore, Asst. County Atty., Bel Air, on brief, for Harford County, Md.

Dwight E. Thomey, Elkton, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

## I

In April 1985, petitioner Hanson Partnership (Hanson) submitted to the Harford County Department of Planning and Zoning an application for approval of the location of a proposed integrated community shopping center. Throughout lengthy subsequent proceedings that application was ardently opposed by respondent, Edgewater Partnership (Edgewater), the owner of an existing shopping center not far from Hanson's proposed location. On 14 April 1987 Hanson seemed to have achieved its goal; the Harford County Board of Appeals approved its request.[1] The Circuit Court for Harford County (Baldwin, J.) affirmed.

■ Edgewater, however, appealed to the Court of Special Appeals, raising a number of issues, none of which were decided by that court. Instead, the intermediate appellate court dismissed the appeal on its own motion. But the grounds for dismissal produced the paradoxical result that the appellant whose appeal before that court was dismissed emerged as the victor. This outcome was achieved because the Court of Special Appeals believed the circuit court had lacked subject-matter jurisdiction.[2] *Edge-*

---

1. In Harford County, the County Council sits as the Board of Appeals. Harford County Code § 267–9.A. It is sometimes referred to as "the Council/Board." As a general matter the Board has "the power and duty to ... [h]ear and decide any zoning case brought before [it]...." *Id.* § 267–9.B.(1). Specifically, it is required to approve (or disapprove) the location of an integrated community shopping center. *Id.* § 267–43.B.(3).

2. It is, of course, well established that an appellate court may notice lack of subject-matter jurisdiction sua sponte. *See, e.g., Paolino v. McCormick & Co.,* 314 Md. 575, 552 A.2d 868 (1989); *Kawamura v. State,* 299 Md. 276, 282 n. 4, 473 A.2d 438, 441 n. 4 (1984); *State v. McCray,* 267 Md. 111, 126, 297 A.2d 265, 273 (1972); *Robinson v. Montgomery County,* 66 Md.App. 234, 503 A.2d 275, *cert. denied,* 306 Md. 119, 507 A.2d 631 (1986); *see also* Md.Rule 8–131(a). But in this case if there was any lack of subject-matter jurisdiction, it was at the Board of Appeals level. Despite the purportedly untimely appeal to the circuit court, that court possessed jurisdiction to determine the

*water Partnership v. Harford Cty.*, 76 Md.App. 561, 547 A.2d 1065 (1988). That conclusion followed from the appellate court's construction of § A274–5.B.(3)(c) of the Harford County Code:[3]

(3) A zoning request shall automatically be considered to have been denied in the event that:

\* \* \*

(c) The case is remanded to the Hearing Examiner for additional testimony and a decision is not rendered by the Council/Board *within ninety (90) calendar days from the date of the conclusion of the hearing before the Council/Board.* The Hearing Examiner shall file his/her supplemental or amended opinion within fifteen (15) calendar days from the conclusion of the hearing on the remand [emphasis supplied].

As we shall see, this case was remanded by the Board to a hearing examiner. That occurred on 12 August 1986. On 11 December the hearing examiner issued a supplemental decision recommending approval of Hanson's application. The Board held a hearing on that recommendation on 7 April 1987, and on 14 April issued a written decision adopting the hearing examiner's recommendations. But in the view of the Court of Special Appeals, the Board's action came too late. Although the issue of the construction of § A274–5.B(3)(c)'s 90–day provision (like that of subject-matter jurisdiction) had been raised by no party in either

timeliness of the appeal. And the Court of Special Appeals had jurisdiction to entertain the appeal from the circuit court. The intermediate appellate court should not have dismissed the appeal. Strictly speaking, its mandate doing that had the anomalous effect of retaining in effect the judgment of the circuit court—a judgment favorable to Hanson. Given the Court of Special Appeals' theory in this case, its mandate should have vacated the judgment of the circuit court and remanded the case to that court with direction to vacate the 14 April 1987 decision of the Board of Appeals. *See, e.g., Baltimore Heritage, Inc. v. Mayor & City Council of Baltimore,* 316 Md. 109, 557 A.2d 256 (1989).

**3.** Except as otherwise noted, all section references are to the Harford County Code.

the circuit court or the Court of Special Appeals, the latter read the Code as requiring the 90-day period run from the date of the remand—12 August 1986.

By that reading, the 90 days had expired in November 1986, long before the Board's April 1987 decision. Under the County Code provision, failure of the Board to render a decision on the zoning request within the 90 days meant that the request was automatically denied at the beginning of the 91st day. On that date began the 30-day time period within which to note an appeal to the circuit court. *See* Md. Rule B4.a. But no appeal was taken until after the Board's April 1987 decision. Consequently, the appeal to the circuit court was untimely and that court, held the Court of Special Appeals, had no jurisdiction to decide it. The statutorily-deemed denial of Hanson's application became final on 11 December 1986, 30 days after the statutory automatic denial date of 11 November. Thus, Edgewater prevailed.

At Hanson's behest we granted the writ of certiorari primarily to determine the proper construction of § A274-5.B.(3)(c) of the Harford County Code.[4] 314 Md. 508, 551 A.2d 874 (1989). We shall assume, without deciding, that a "deemed denied" provision like that contained in § A274-5.B.(3)(c) deprives the tribunal affected by it of power to act after the "deemed" date, and that the "deemed" date becomes the date from which time for appeal runs. *See Scherr v. Braun*, 211 Md. 553, 561, 128 A.2d 388, 391 (1957) (under predecessor of Md.Code (1987 Repl.Vol.), Art. 2B, § 175(e)(3), decision of liquor board is automatically affirmed if court fails to decide appeal within

---

4. The Harford County Code was recodified in 1986. The events we are concerned with occurred both prior to and after the effective date of the recodification. Because the recodification (so far as pertinent to the principal issue in this case) involved no substantive change, we refer generally to the present Code. *See* Harford County Council Bill No. 87-1, § 1-3A. At an earlier date, the Code provisions dealing with zoning were contained in Article 20 of the Code and known as the Harford County Zoning Ordinance. What is now § A274-5.B.(3)(c) was § 20.2.(b)(4)(c).

30 days after record has been filed in court); *Pearce v. Board of Liq. Comm'rs*, 228 Md. 515, 524, 180 A.2d 651, 655 (1962) (after same 30-day period has passed, court no longer has power to act); *Robinson v. Montgomery County*, 66 Md.App. 234, 242, 503 A.2d 275, 278, *cert. denied*, 306 Md. 119, 507 A.2d 631 (1986) (Montgomery County Code provided that a motion to reconsider an agency decision was "deemed denied" 10 days after motion was filed; time for appeal from automatic denial ran from statutory denial date and after that date agency no longer had power to act).

We do not agree, however, with the intermediate appellate court's construction of § A274-5.B.(3)(c). Since the merits of Hanson's zoning application also are encompassed within our grant of certiorari, and since we believe the circuit court did not err when it affirmed the Board on the merits, we shall reverse the judgment of the Court of Special Appeals and remand with direction that the judgment of the Circuit Court for Harford County be affirmed.

## II

Our excursion into the depths of § A274-5.B.(3)(c) will be aided by a map of sorts—an outline of general procedures to be followed in Harford County, with respect to applications like that filed by Hanson.

An application for an integrated community shopping center must be filed with the Department of Planning and Zoning. Harford County Code §§ 267-7.B.(1), 267-9.D., A274-1.B. Within five days of the receipt of the application, the department must process and forward the application to a hearing examiner. *Id.* § A274-1.B.; *see also* § A274-1.C. The hearing examiner schedules a public hearing and gives notice of it as required by the Harford County Charter. *Id.* § A274-2.A. The Charter prescribes notice once a week for two consecutive weeks in two newspapers published in the county, the second notice to be published at least 14 days before the hearing. Charter § 704(b). Procedures for the public hearing are established. Code § A274-3. The hearing examiner may require briefs. *Id.*

§ A274-4.A.(12). The examiner must file a decision no later than 30 days after closing the record, § A274-4.A.(12), and that decision is final unless request for final argument is made within 20 days of that filing. *Id.* §§ 267-9.F., A274-4.B.

The concept of final argument is central to the Harford County scheme, for it is by request for final argument that matters are brought before the Board, and thus become subject to various dismissal or "deemed denied" provisions. Request for final argument may be made by a Board member, the applicant, the People's Counsel, or an aggrieved party who appeared at proceedings before the hearing examiner. *Id.* §§ 267-9.G., A274-5.A.(1). When a request is made, the applicant must obtain a transcript of the proceedings before the examiner and deposit it and hearing advertising costs with the Secretary of the Board. *Id.* § A274-5.A.(4), -5.B.(1). If the transcript is not filed and the fees not paid within 90 days of the date of request for final argument (or within an extension of the 90-day period), the application is dismissed without prejudice. *Id.* § A274-5.A.(5). But if those prerequisites are met, final argument must be scheduled and heard within 90 calendar days of the date when the last requirement was met. *Id.* § A274-5.B.(1)(c).

If final argument has been requested, and the prerequisites have been met, but for some reason the Board does not hear final argument, the application "shall automatically be considered to have been denied." *Id.* § A274-5.B.(3)(a). That result also occurs if the "Council/Board does not render a decision within the ninety-calendar day period." *Id.* § A274-5.B.(3)(b).[5]

---

5. It is not entirely clear what 90-day period is intended here. The Code speaks of "the" 90-day period, which suggests one previously established. The 90-day period prescribed immediately before § A274-5.B.(3)(b) is the one set forth in § A274-5.B.(1)(c). If that period governs, then the application must be scheduled, heard, and decided within 90 calendar days after the last prerequisite for final argument has been met. It seems more likely that the

Following final argument, the Board may affirm, reverse, modify, or remand the hearing examiner's recommendation.[6] *Id.* §§ 267–9.H., A274–5.E. If there is a remand, the applicant must deposit $50 with the secretary of the Council "to cover the additional cost of advertising, as may be required...." *Id.* § A274–5.G. Failure to deposit the fee within 10 days of the date of notice of remand results in dismissal of the application without prejudice to the applicant. *Id.* If there is a remand, as we have seen, the application is automatically denied if "the Council/Board" does not render a decision "within ninety (90) calendar days from the date of the conclusion of the hearing before the Council/Board." *Id.* § A274–5.B.(3)(c).

As noted previously, Hanson initiated the process above described on 5 April 1985, when it submitted to the Department of Planning and Zoning its application for approval of the location of a proposed integrated community shopping center. On 21 May 1986, after 10 separate hearings conducted between 19 June 1985 and 26 February 1986, the hearing examiner recommended denial of the application. Hanson requested final argument before the Board. That occurred on 12 August 1986. The Board remanded to the hearing examiner for further testimony and analysis. The examiner held additional hearings in early October. On 11 December 1986, the examiner issued a supplemental decision recommending approval of Hanson's application.

It was now Edgewater's turn to request final argument before the Board. The Board held a hearing on 7 April 1987 and a week later issued a decision adopting the hearing examiner's favorable recommendation. Edgewater's appeal to the circuit court did not meet with success, but, as

---

§ A274–5.B.(3)(b) period is intended to run from the date of final argument. *See* Harford County Charter § 705(d). More precise drafting would clarify this and several other portions of the Code.

**6.** The decision of the hearing examiner is considered a recommendation to the Board of Appeals if request for final argument is made. Code § A274–4.C.

we have recounted, it prevailed in the Court of Special Appeals. That result, as we have pointed out, depended on the latter court's reading of the 90-day provision contained in § A274-5.B.(3)(c). We now explain why that reading was incorrect.

### III

■ What we must determine is whether the 90-day period under § A274-5.B.(3)(c) runs from the date the Board of Appeals concluded its hearing on the hearing Examiner's supplemental decision (7 April 1987) or, as the Court of Special Appeals held, from the date of the conclusion of the Board's hearing preceding the remand to the hearing examiner (12 August 1986). When interpreting statutory language we must consider " 'the purposes of the enactment, the ends to be accomplished, [and] the consequences that may result from one meaning rather than from another....' " *Scherr*, 211 Md. at 561, 128 A.2d at 391 (quoting *Upshur v. Baltimore City*, 94 Md. 743, 757, 51 A. 953, 958 (1902)). Results that are unreasonable, illogical, or that are at odds with the legislative purpose should be avoided. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 516, 525 A.2d 628, 633 (1987).

Essentially, the present language of what is now § A274-5.B.(3)(c) was adopted by Bill No. 79-2, introduced 6 February 1979. *See* n. 4, *supra*. Before the amendments embodied in that bill were adopted, the pertinent language read "if the case is remanded to the Hearing Examiner for additional testimony and a decision is not rendered by the Board within ninety (90) calendar days from the date of the Hearing Examiner's supplemental or amended opinion then the application shall automatically be considered to have been denied by the Board." This, as the Court of Special Appeals noted, would have required that the 90-day period in the present case run from 11 December 1986. *See Edgewater*, 76 Md. at 566, 547 A.2d at 1068.

But the clear guidance supplied by that language was muddied by Bill No. 79-2, which struck out the reference to

the "Hearing Examiner's supplemental or amended opinion" and substituted "conclusion of the hearing before the Council/Board." [7] Thus was introduced the ambiguity with which we now must deal, for it is not at all clear whether the "hearing" means the one at which remand was ordered or the one held subsequent to remand, *i.e.*, at final argument after receiving the examiner's supplemental report.

The Court of Special Appeals acknowledged that § A274–5.B.(3)(c) was subject to two "equally plausible" interpretations. *Edgewater*, 76 Md.App. at 565, 547 A.2d at 1068. But a review of legislative history persuaded it that the 90–day period should be construed as running from the date on which the Board had ordered the remand (12 August 1986). It looked to the bill sponsor's statement that the amendments were intended to " '*speed up* the process for zoning decisions but giv[ing] the applicant sufficient time to proceed.' " *Id.* at 566, 547 A.2d at 1068 [emphasis and brackets in opinion]. Giving weight only to the emphasized portion of this statement of legislative purpose, the appellate court concluded that

> [t]o adopt the other possible meaning ... would be to extend the zoning process to some indeterminable future date 90 days beyond the date on which the Board determined, at its leisure, to consider the matter.

*Id.* at 566–567, 547 A.2d at 1068. This conclusion is wrong for at least three reasons.

First, it is simply wrong to say that if the 90–day period runs from the post-remand final argument before the Board, the "zoning process [would extend] to some indeterminable future date 90 days beyond the date on which the

---

7. Bill 79–2 also was amended to insert, immediately after the "considered to have been denied by the Board" sentence, the following: "The Hearing Examiner shall file his or her supplemental or amended opinion within fifteen (15) calendar days from the conclusion of the hearing on the remand." The Court of Special Appeals rested its decision in part on noncompliance with this provision. *Edgewater Partnership v. Harford County*, 76 Md.App. 561, 567 n. 4, 547 A.2d 1065, 1068 n. 4 (1988). As we shall demonstrate, this, too, was error.

Board determined, at its leisure, to consider the matter." As we pointed out in Part II of this opinion, the County Code requires that final argument be requested within 20 calendar days after the hearing examiner has made a decision; otherwise that decision becomes final. Code §§ 267-9.F., A274-4.B. Within 90 calendar days of the request for final argument, steps must be taken to perfect that request; if they are not, the application is dismissed. *Id.* § A274-5.A.(4)-(5). Once the request is perfected, final argument must be heard within 90 calendar days. *Id.* § A274-5.B.(1)(c). Thus, the Board is not "at leisure" to postpone indefinitely the final argument hearing. Rather, it must proceed according to a strict, albeit somewhat extended, timetable.

Second, the Court of Special Appeals' interpretation could produce illogical and unintended results. Hanson contends, indeed, that the remand timetable is such that it would be *impossible* to get to a timely final argument following a remand order. Hanson's argument depends to some degree on its assumption that the Code requires full published advertising before a remand hearing and that the hearing examiner will require briefs. It is not clear to us whether the County Charter or Code requires a second round of published notices on remand, although that requirement was imposed on Hanson in this case. It is certainly conceivable, too, that briefs will not always be required on remand. But these matters aside, the remand process may be a lengthy one. More than one hearing may be required. And hearings may not be easy to schedule. For example, at the initial proceedings before the examiner in this case, the first eight pages of transcript are devoted to the problem of scheduling subsequent hearings.

In any event, at least 35 days may elapse from the conclusion of the post-remand examiner's hearing until someone has requested final argument. The examiner has 15 days from the end of the hearings within which to file a supplemental decision and from that date runs an additional 20 days within which final argument must be requested.

In the posture of the present case, that would allow a party in Edgewater's position to wait until the last day, thereby cutting further into the Court of Special Appeals' 90–day period. And once the request for final argument is made, there is a further 90–day period within which that request must be perfected. While the burden of perfecting is on the applicant (here, Hanson), it may take considerable time to obtain a transcript. Additionally, it would seem odd to allow 90 days to perfect a request for final argument if, during that very period, another 90–day provision could operate to deny the application automatically.

The short of it is that even the most diligent applicant, assisted by a hard-working hearing examiner and a cooperative opponent, could have difficulty meeting the deadline imposed by the Court of Special Appeals. Even if the legislative purpose here was to expedite the zoning process, it surely was not to frustrate good faith and diligent efforts to conform to it. Certainly, the council intended to give effect to the several 90–day provisions in its carefully-designed timetable and could not have meant the single 90–day provision dealing with appeals after remand to render the others virtually meaningless.

Finally, the Court of Special Appeals gave much emphasis to the stated purpose of speeding up the zoning process, but short shrift to the equally prominent objective of " 'giv[ing] the applicant sufficient time to proceed.' " When one examines some of the other changes made by Bill No. 79–2, it becomes clear that the latter goal played a not insignificant part in the legislative scheme. At least one of the apparently "expediting" amendments seems to be merely directory in nature, while other amendments actually lengthened the process. Unlike the Court of Special Appeals, we shall consider Bill No. 79–2 and its enactments as a whole, instead of examining only the "remand" provision in isolation. *See Sinai Hosp. v. Dep't of Employment*, 309 Md. 28, 39–40, 522 A.2d 382, 388 (1987) (when ascertaining legislative intent, all pertinent parts of the statute must be considered).

As we have noted, Bill No. 79–2 changed prior law by requiring the hearing examiner to file his or her supplemental decision within 15 days from the conclusion of the remand hearing. *See* note 7, *supra.* But unlike many of the time provisions dealing with post-examiner proceedings, this one carries no express sanction for noncompliance. It is directed to a tribunal or the agent of a tribunal. Under all of the circumstances, we believe that any sanction should not impact on one of the parties. *See, e.g., Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982) (interpreting predecessor to Md.Code (1988 Supp.), Family Law Art., § 8–203(a)); *Resetar v. State Bd. of Education,* 284 Md. 537, 399 A.2d 225 *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979) (interpreting a Montgomery County Board of Education rule); *Snyder v. Cearfoss,* 186 Md. 360, 46 A.2d 607 (1946) (interpreting Art. IV, § 23 of the Maryland Constitution); *McCall's Ferry Co. v. Price,* 108 Md. 96, 69 A. 832 (1908) (interpreting Art. IV, § 15 of the Maryland Constitution).

Other amendments are intended to or have the effect of adding or potentially adding time to the zoning process. For example, prior to Bill No. 79–2, the hearing examiner's decision became final 15 days after it was filed. The bill extended this to 20. Bill No. 79–2, § 1 (amending old Code § 20.2.(a)(3)). Two provisions requiring dismissal with prejudice were modified to call for dismissal without prejudice. *Id.* (amending old Code §§ 20.2.(b)(2), 20.2.(e)). Furthermore, the requirement that the Board's final decision be "rendered" within 90 calendar days of the perfection of the request for final argument was changed to require only that final argument "be scheduled and heard" within those 90 days. *Id.* (amending old Code § 20.2.(b)(4)).

The overall purpose of the amendments to Bill No. 79–2 seem to have been to make the zoning process more workable and more effective. It is not unreasonable to conclude that requiring the 90–day period for Board decision run from the date of post-remand final argument, as opposed to the date of filing the examiner's supplemental decision,

advances this goal. The provision we have before us here certainly was intended to impose time limits on Board action following a remand. But we hold that the 90–day period within which the Board must decide runs from the final argument that occurs after completion of the examiner's remand hearings, not from the final argument at which remand is ordered. To hold otherwise would likely produce absurd results, would not give full effect to all the Code language, and would tend to frustrate, rather than implement, the legislative goal.

The critical final argument hearing was held on 7 April 1987. The Board's decision was filed a week later, well within the 90–day period. Edgewater's appeal was noted within 30 days of that filing, so was timely. The circuit court had jurisdiction over the appeal; the Court of Special Appeals erred in holding otherwise.

## IV

■ As a final matter we must decide whether the circuit court's ruling, affirming the decision of the Board of Appeals, was correct. Edgewater contends that the shopping center failed to meet the requirements of portions of § 267–45.B. Specifically, it argues that Hanson's plan failed to provide adequate protection for trees and did not minimize potential earthmoving or erosion.[8] It was this very aspect of the plan that was to be considered on remand, for the Board specified that there should be further testimony on "the requirements suggested by the Department of Planning and Zoning such as tree buffers and conservation efforts."

---

8. In pertinent part, § 267–45. provides:
    The following general requirements shall be applicable to all projects developed under this Article:
    A. The protection of trees shall be considered in determining the location of open space and development areas.
    B. The project shall be designed to minimize earthmoving erosion and the disturbance of environmentally sensitive features.

That testimony was taken, and it appears that Hanson had removed most of the trees from the shopping center site and had engaged in extensive grading. Edgewater says that by the time of the remand hearing, there were no trees left to protect. But § 267-45.A. does not mandate the preservation of trees, desirable as that objective might be. It requires only that protection of trees be considered. This, the hearing examiner did. He accepted the view that if a wooded area is to be developed as a shopping center, all trees cannot be retained. Witnesses, including an official of the Department of Planning and Zoning, testified that Hanson's landscaping proposal (essentially a buffer of trees along Route 40 plus some internal plantings) met the requirements of the Code and explained why. Additionally, there was evidence that the grading of the parcel was no more than that necessary to construct the shopping center.

The hearing examiner's supplemental decision carefully considered the evidence on remand and addressed Edgewater's present concerns. He rejected them. The Board, after final argument, did likewise. The law is well settled

that upon appeal from the action of a zoning board, if that action is supported by any substantial evidence, then the matter before it was "fairly debatable" and the lower court should not substitute its judgment for that of the administrative body. On the other hand, if the action of the board was not supported by any substantial evidence, then [its] action was arbitrary and capricious and results in a denial of due process of law ... and should be reversed....

Luxmanor Citizens v. Burkhart, 266 Md. 631, 647, 296 A.2d 403, 411 (1972); see also Ad + Soil, Inc. v. County Com'rs, 307 Md. 307, 338, 513 A.2d 893, 909 (1986) (order of a county zoning board must be upheld if there is no error of law and the agency's conclusions are based upon sufficient facts).

The circuit court was correct in holding that the matter was fairly debatable. Although there was conflicting testimony before the examiner, there was substantial evidence

to support the Board's decision. The circuit court did not err in affirming it.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY EDGEWATER PARTNERSHIP.