771 A.2d 1051

DEPARTMENT OF HEALTH AND MENTAL HYGIENE

v.

Minnie CAMPBELL, et al.

No. 89, Sept. Term, 1999.

Court of Appeals of Maryland.

May 9, 2001.

**110**

Elizabeth M. Kameen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland and Heidi A. Moylan, Asst. Atty. Gen., on brief) of Baltimore, for appellant.

Richard B. Stofberg (J. Michael Holloway and Michael A. Stanley, Law Offices of Arthur L. Drager, on brief) of Baltimore, for appellees.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* WILNER, CATHELL, HARRELL, and THEODORE G. BLOOM, (Retired, Specially Assigned) JJ.

BELL, Chief Judge.

This case presents the issue of whether guardianship commissions and attorneys' fees of an attorney appointed guardian of the property of mentally incompetent Medicaid recipients constitute available income under the Maryland Medicaid Assistance Program, specifically whether such fees qualify as a personal needs allowance.[1] We shall hold, con-

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. In their brief in this Court, the appellees argue that the commissions and attorneys' fees qualify as "incurred medical expenses," see COMAR 10.09.24.10D(2)(d), that are not subject to payment by a third party, abandoning the "personal needs allowance" argument they had heretofore made. At each prior stage of the proceedings, however, before the Administrative Law Judges, before the Review Board and before the Circuit Court, the only basis argued by the appellees was the "personal needs allowance." We have said time and time again, that we will review an adjudicatory agency decision solely on the grounds relied upon by the agency. *See County Council of Prince George's County v. Brandywine Enterprises, Inc.*, 350 Md. 339, 349, 711 A.2d 1346, 1350–51 (1998); *Insurance Commissioner v. Equitable*, 339 Md. 596, 634, 664 A.2d 862, 881 (1995); *United Parcel v. People's Counsel*, 336 Md. 569, 585–587, 650 A.2d 226, 234–235 (1994); *Mossburg v. Montgomery County*, 329 Md. 494, 507–508, 620 A.2d 886, 893 (1993); *Harford County v. Preston*, 322 Md. 493, 505, 588 A.2d 772, 778 (1991); *Motor Vehicle Admin. v. Mohler*, 318 Md. 219, 231, 567 A.2d 929, 935 (1990); *Baltimore Heritage, Inc. v. Mayor and City Council of Baltimore*, 316 Md. 109, 113, 557 A.2d 256, 258 (1989); *United Steelworkers v. Bethlehem Steel*, 298 Md. 665, 679, 472 A.2d 62, 69 (1984); *Turner v. Hammond*, 270 Md. 41, 55–56, 310 A.2d 543, 551 (1973); *Pistorio v. Zoning Board*, 268 Md. 558, 570, 302 A.2d 614, 619 (1973). The administrative agency decided the cases on the basis of the "personal needs allowance," not the "incurred medical expenses" rationale. An administrative agency may be affirmed only on the basis of the grounds on which it decided the case. *See United Parcel*, 336 Md. at 577, 650 A.2d at 230; *Washington Nat'l Arena Ltd. Partnership v. Comptroller of the Treasury*, 308 Md. 370, 380, 519 A.2d 1277, 1282 (1987); *United Steelworkers*, 298 Md. at 679, 472 A.2d at 69.

trary to the conclusion of the Circuit Court for Baltimore City, that they are not.

The Medicaid program, a jointly funded collaboration between a State and the federal government providing medical assistance to low income persons unable to afford to pay for their medical care, is a voluntary program, in which a State may elect, but is not compelled, to participate. 42 U.S.C. § 1396 et seq.; 42 C.F.R. §§ 430–456. When a State elects to participate in the Medicaid program, it is required to develop, and submit for federal approval by the Health Care Financing Administration (hereinafter "HCFA"), the federal agency that administers the Federal Medical Assistance Program, 42 U.S.C. § 1396, a State Medicaid Plan for the provision of medical assistance that complies with the Medicaid Act and the regulations promulgated by the Secretary of the Department of Health and Human Services. 42 U.S.C. § 1396; 42 C.F.R. § 430–456. If HCFA approves the State plan, then the State qualifies for federal funding. After the plan receives federal approval, alteration of it without federal approval, would jeopardize its federal funding. 42 U.S.C. § 1396(c).

Maryland has chosen to participate in the Medicaid program. It does so through the Maryland Medical Assistance Program, operated by the appellant. *See* Md.Code (1982, 2000 Repl.Vol.) § 15–103 of the Health General Article. The Medical Assistance program provides reimbursement for the cost of health care services provided to certain indigent persons, i.e. "for indigent individuals or medically indigent individuals."[2] § 15–103(a)(2)(i). *See* COMAR 10.09.24.01 (including

---

Of course, our refusal to address the "incurred medical expense" issue is without prejudice to it, or any other basis, being raised as the basis for recovery in another case.

**2.** "Indigent individuals and medically indigent individuals" are not defined; however, the Secretary is authorized to "adopt rules and regulations to carry out the provisions of law that are within the jurisdiction of the Secretary." Md.Code (1982, 2000 Repl. Vol.) § 2–104(b)(1) of the Health General Article. *See also* § 15–105(a) ("The Department shall adopt rules and regulations for the reimbursement of

aged, blind or disabled persons within the category of persons for whom eligibility may be determined); COMAR 10.09.24.03D(4) (including "an aged, blind or disabled person" in the list of the "Medically Needy").

Thus, in Maryland, an individual who is aged, blind, or disabled, COMAR 10.09.24.03D(4),[3] and has an income that does not exceed $ 2500, Health Gen. § 15–109(b)(1), COMAR 10.09.24.08L and M, qualifies for Medical Assistance benefits. An individual with assets that exceed the resource limit, but whose income is insufficient to meet the cost of care, may enter a long-term care facility, such as a nursing home. Such an individual is required to contribute all of his or her "available income" to the nursing facility to pay for the cost of care, with the program making up the difference. COMAR 10.09.24.10D (3);[4] see 42 C.F.R. § 435.832(a).

The Maryland Medical Assistance Program regulations do not define "available income." COMAR 10.09.24.10D(2), however, prescribes how to determine "available income." And

---

providers under the Program"). COMAR 10.09.24.02, .03, and .04 address eligibility under the program.

**3.** COMAR 10.09.24.03D provides:
"D. The following persons who apply for and meet the requirements of these regulations are covered as Medically Needy:
"(1) A pregnant woman who has been denied AFDC solely because her income or resources exceed the cash assistance level;
"(2) A person younger than 21 years old;
"(3) A caretaker relative (and spouse);
"(4) An aged, blind, or disabled person; and
"(5) A person who was eligible as Medically Needy in December, 1973, on the basis of the blindness or disability criteria of Aid to the Permanently and Totally Disabled or Public Assistance to the Needy Blind and who continues to meet current requirements except for blindness or disability criteria."

**4.** COMAR 10.09.24.10D(3) provides:
"(3) If, after application of the disregards in § D(2) of this regulation, the person's income equals or is less than the projected cost-of-care, eligibility exists and may begin on the first day of the period under consideration. The amount remaining after application of the disregards in § D(2) of this regulation is available income to be applied to the person's cost-of-care. Certification is established under Regulation .12E(3) of this chapter."

the regulations define income as "any property or service received by a person in cash or in-kind which can be applied directly, or by sale or conversion, to meet basic needs for food, shelter, and medical expenses." COMAR 10.09.24.02B(23)(a). Thus, available income is the difference between total income and any allowable deductions. *See id.* For institutionalized recipients, the following deductions are allowed from the recipient's total income to determine available income: (1) a personal needs allowance [5]; (2) a spousal or family allowance; (3) a residential maintenance allowance for a single person; and (4) incurred medical expenses that are not subject to payment by a third party. *See* COMAR 10.09.24.10D(2)(a)-(d).

### I.

Arthur L. Drager is the guardian of the property [6] for each

---

**5.** 42 U.S.C. § 1396a (q)(1)(A), in pertinent part, states:

"In order to meet the requirement of subsection (a)(50), the State plan must provide that, in the case of an institutionalized individual or couple described in subparagraph (B), in determining the amount of the individual's or couple's income to be applied monthly to payment for the cost of care in an institution, there shall be deducted from the monthly income (in addition to other allowances otherwise provided under the State plan) a monthly personal needs allowance—
(i) which is reasonable in amount for clothing and other personal needs of the individual (or couple) while in an institution, and
(ii) which is not less (and may be greater) than the minimum monthly personal needs allowance described in paragraph (2).
(B) In this subsection, the term 'institutionalized individual or couple' means an individual or married couple-
(i) who is an inpatient (or who are inpatients) in a medical institution or nursing facility for which payments are made under this title throughout a month, and
(ii) who is or are determined to be eligible for medical assistance under the State plan.
"(2) The minimum monthly personal needs allowance described in this paragraph is $30 for an institutionalized individual and $60 for an institutionalized couple (if both are aged, blind, or disabled, and their incomes are considered available to each other in determining eligibility)."

**6.** Maryland Code (1974, 2001 Repl.Vol.) § 13–705 of the Estates and Trusts Article addresses the appointment of guardians of the property of disabled persons. It provides, as relevant, that "if the court determines from clear and convincing evidence that a person lacks sufficient

of seven Medicaid recipients (the appellees).[7] Each appellee is a resident of a nursing facility and receives Medicaid benefits to help pay for his or her care. The present controversy began when Mr. Drager requested that the Maryland Medical Assistance Program ("Program") of the Department of Health and Mental Hygiene (the appellant) deduct his guardianship commissions with respect to his wards from their available incomes.[8] He sought commissions in the following amounts: $522.78 for Minnie Campbell, $294.62 for Lillian Cheatham, $416.27 for Melster Dystart, $ 689.04 for Mahalia LaCruze, $263.42 for Thomas Roundtree, $925.36 for Vivian Tazewell, and $829.37 for Daisy Watts. These requests were denied by the Medicaid Program, which advised Mr. Drager that the Department has "no provisions in [the] regulations to allow for such deductions."

Mr. Drager, on behalf of the appellees, appealed to the Office of Administrative Hearings (OAH), arguing that the commissions should be permitted as part of the personal needs allowance of each Medicaid recipient, that the Administrative Law Judges should follow prior OAH, Board of Review, and

---

understanding or capacity to make or communicate responsible decisions concerning his person, including provisions for health care, food, clothing, or shelter, because of any mental disability, disease, habitual drunkenness, or addiction to drugs, and that no less restrictive form of intervention is available which is consistent with the person's welfare and safety," § 13–705(b), "[o]n petition and after any notice or hearing prescribed by law or the Maryland Rules," it may appoint a guardian of the person of a disabled person. § 13–705(a). The functions of the guardian are provided in § 13–708.

7. The Medicaid recipients and the date on which the guardian of the person was appointed are: Minnie Campbell, May 1996; Lillian Cheatham, September 1993 Melster Dysart, September, 1993; Mahalia La-Cruze, May, 1996; Thomas Roundtree, August, 1995, Vivian Tazewell, February 1996; and Daisy Watts, April, 1991.

8. These cases were not consolidated until the judicial review proceedings in the Circuit Court for Baltimore. Before then, each was processed separately before the Agency and tried separately before several different Administrative Law Judges. Nevertheless, we will refer to the proceedings, except where necessary to do otherwise, as if there was but one proceeding.

Circuit Court decisions that permitted the deduction of such commissions, and that public policy considerations required a ruling favorable to the appellees. In each case, the ALJ affirmed the appellant's decision, concluding that it had correctly held that the guardianship commissions are not a part of the personal needs allowance and, thus, are not a permissible deduction in calculating a Medicaid recipient's available income.[9] The appellees' other arguments were also rejected. The Board of Review, to which the decisions were appealed, affirmed.

The appellees sought judicial review in the Circuit Court for Baltimore City, and the cases were consolidated for hearing. Pressing the same arguments they had made before the ALJs, the appellees sought, in the Circuit Court, not just the deduction of the guardianship commissions, but attorneys' fees to be paid on the same basis. Accepting their argument that guardianship commissions should be deducted from a recipient's income as a part of the personal needs allowance, the Circuit Court reversed. As to the guardianship commissions, the court ordered:

"that the guardianship commissions calculated in accordance with the Annotated Code of Maryland, Estates and Trusts Article Sections 13–218 and 14–103, and approved by the Trust Clerk for the Circuit Court for Baltimore City for services rendered on behalf of [the named appellee] shall not be considered as 'available income' as set forth in COMAR 10.09.24.10D and shall be deducted prior to the

**9.** The ALJ that decided the Campbell and Cheatham cases, which were consolidated for argument, found that "the personal needs that are contemplated by the statutory personal needs allowance are incidental items used for clothing or for grooming one's body." Similarly, in the case of Vivian Tazewell, the ALJ determined that the personal needs allowance was intended to cover items such as "haircuts, pedicures, shampoos and chewing gum, not to pay guardian's commissions or other legal fees." In the cases of Melster Dysart, Mahalia LaCruze and Daisy Watts, the ALJs found that the Department's reading of the regulation at issue was correct, and "bolstered by the State's need to comply with federal requirements...."

calculation of available income for [the named appel-lee]. . . ."

and

"That the Baltimore City Department of Social Services Long Term Medical Assistance Unit be and is hereby directed to allow guardianship commissions in [a stated amount] to be paid unto Arthur L. Drager for services rendered by him in his capacity as Guardian of the Property of [the named appellee]."

The trial court reasoned:

"[I]n our guardianship docket, a lot of indigent people would be out on the street but for our appointing guardians and having Counsel represent the guardian, and then be able to get the benefits that they're entitled to under the law. So, I don't view it as sort of gilding the lily, I view it as essential to life and to living, and, therefore I will sign the Orders authorizing the fees be paid."

The court also granted the appellee's request for, and ordered the Department to allow, a counsel fee of $600, for each case.

We issued the writ of certiorari on our own motion, while this case was pending in the Court of Special Appeals. We now reverse the judgment of the Circuit Court for Baltimore City.

## II.

Our review of a decision by the Department of Health and Mental Hygiene, an administrative agency of the State, is governed by Md.Code (1984, 1999 Repl.Vol.) § 10–222 of the State Government Article, section (h) of which provides:

"(h) In a proceeding under this section, the court may:

"1. remand the case for further proceedings;

"2. affirm the decision of the agency; or

"3. reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

\* \* \*

"c) results from an unlawful procedure;

"d) is affected by any other error of law;

"e) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

"f) is arbitrary or capricious."

Thus, the issue for the reviewing court is whether the administrative agency committed an error of law, or whether its decision is supported by substantial evidence, or is "arbitrary or capricious." *Insurance Comm'r of State of Md. v. Equitable Life Assurance Soc'y of U.S.,* 339 Md. 596, 614–15, 664 A.2d 862, 871–72 (1995).

The question whether guardianship commissions are an allowable deduction from a Medical Assistance recipient's available income under COMAR 10.09.24.10D(2)(d), as a "personal needs allowance," is solely one of law. As to the review of questions of law, we have pointed out, see *Office of People's Counsel v. Maryland Public Service Comm'n,* 355 Md. 1, 14, 733 A.2d 996, 1003 (1999) (quoting *Commissioners of Cambridge v. Eastern Shore Public Serv. Co.,* 192 Md. 333, 339, 64 A.2d 151, 154 (1949)) and citing *Mayor & Council of Crisfield v. Public Serv. Comm'n,* 183 Md. 179, 189, 36 A.2d 705, 710 (1944) and *Baltimore Gas and Elec. Co. v. Dep't of Health and Mental Hygiene,* 284 Md. 216, 230–31, 395 A.2d 1174, 1181 (1979), that "[q]uestions of law ... are 'completely subject to review by the courts,'... although the agency's interpretation of a statute may be entitled to some deference." *See also, Total Audio–Visual Systems, Inc. v. Department of Labor, Licensing and Regulation,* 360 Md. 387, 394, 758 A.2d 124, 128 (2000); *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999). We have noted also that the deference under these circumstances is by no means dispositive, nor otherwise as great as that applicable to factual findings or mixed questions of law and fact. *See Baltimore Bldg. and Constr. Trades Council v. Barnes,* 290 Md. 9, 14, 427 A.2d 979, 982 (1981). Accordingly, this Court is not bound by the agency's legal conclusions; we are, in short, "under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law." *Peo-*

*ple's Counsel for Baltimore County v. Maryland Marine Mfg.
Co.,* 316 Md. 491, 497, 560 A.2d 32, 38 (1989); *See also Board
of Physician Quality Assurance v. Banks,* 354 Md. 59, 67, 729
A.2d 376, 380 (1999).

## III.

█ As noted above, the trial court ordered, in respect to
each appellee, that the guardianship commissions "be considered
as 'available income' . . . and shall be deducted prior to
calculation of available income." That order must have been
premised on the appellees' written memorandum of law, which
the court indicated it considered, because the appellees' oral
argument consisted only of rebuttal of some of the arguments
advanced by the appellant. Other than the policy arguments
that the trial court specifically rejected as "for a legislative
body or regulatory body," [10] the only basis for relief offered by
the appellees in their written memorandum was that the
commissions were a part of the "personal needs allowance."
We must assume, therefore, that the "personal needs allowance"
is the basis on which the court decided the case, and we
review its judgment with that in mind.[11]

█ By statute, Maryland prescribes the eligibility requirements
for the Medical Assistance Program—as relevant to the

---

**10.** Before the Circuit Court, counsel for the appellant argued:

"Finally, the appellant [the appellees in this Court] has raised a
number of public policy arguments. And, this simply is [not] the
forum to address public policy concerns. The Regulations are passed
through a specific process and there is notice to the public and an
opportunity for comment, and opinions on that, and that is the time
to raise public policy concerns with respect to COMAR. So I would
suggest that this is the inappropriate forum for that."

**11.** The appellant also addressed the issue of whether guardianship
commissions may be deducted from total income to determine "available
income," the threshold for assessing whether an individual is
medically needy. In the cases of appellees Cheatham and Campbell,
the Administrative Law Judge decided the issue, concluding that "the
court-ordered obligation for [those appellees] to . . . support [themselves]
by paying a guardian of the property to protect [their] property,
is . . . a court-ordered support obligation that can not be excluded from
available income." In support, the ALJ relied on cases holding that

case *sub judice,* indigence or medical indigence, § 15–103(a)(2)(1), and an income, for one person, of $2500, § 15–109(b)(1). These requirements have been elucidated and further refined by regulations, the validity of which, substantively and procedurally, have not been, and are not now being, challenged.[12] As noted, COMAR 10.09.24.04D (4) defines "Medically Needy" as including "an aged, blind, or disabled person" and COMAR 10.09.24.08L and M confirm the eligibility limitation for the Medical Assistance Program. COMAR 10.09.24.10D, in pertinent part, provides:

"D. Current Eligibility.

"(1) Excess Resources. When the countable resources are greater than the medically needy resource level, eligibility does not exist.

"(2) Determination of Available Income. The following amounts shall be deducted from total income in the following order:

"(a) A personal needs allowance of:

"(i) $40 a month for an institutionalized person other than a person who meets the requirements of § D(2)(a)(iii) of this regulation."[13]

---

available income is not reduced by court-ordered support payments or mandatory withholdings. *See Himes v. Shalala,* 999 F.2d 684, 689 (2d Cir.1993); *Peura by Herman v. Mala,* 977 F.2d 484, 491 (9th Cir.1992); *Clark by Clark v. Iowa Dept. Of Human Services,* 513 N.W.2d 710, 711 (Iowa 1994). The appellant agrees, citing, in addition to those cited by the ALJ, the cases of *Ussery v. Kan. Dept. of Social and Rehabilitation Servs.,* 258 Kan. 187, 899 P.2d 461, 466 (1995) and *Crider v. Fla. Dep't of Health and Rehabilitative Servs.,* 555 So.2d 408, 413–14 (Fla.App. 1989). We do not decide the issue and intimate no opinion as to the correctness of this basis for the ALJ's decision.

**12.** Regulations that are consistent with the letter and spirit of the law under which they are promulgated and under which the agency acts are not subject to successful challenge. *Christ by Christ v. Md. Dep't of Natural Resources,* 335 Md. 427, 437, 644 A.2d 34, 38 (1994); *Lussier v. Md. Racing Comm'n,* 343 Md. 681, 687, 684 A.2d 804–07 (1996).

**13.** Regulation 10.09.24.10D (2)(a)(iii) pertains to a "person who resides in an ICF–MR or mental hospital, participates in therapeutic work

■ "Personal needs allowance" is not further defined in the regulations. Insight into meaning may be obtained from perusal of the pertinent sections of the federal statute and the accompanying regulations. 42 U.S.C. § 1396a(a)(50) provides for a monthly personal needs allowance for certain institutionalized individuals and couples. Section 1396a (q)(1)(A) elaborates. In pertinent part, it provides:

"(q) Minimum monthly personal needs allowance deduction; 'institutionalized individual or couple' defined.

"(1)(A) In order to meet the requirement of subsection (a)(50), the State plan must provide that, in the case of an institutionalized individual or couple described in subparagraph (B), in determining the amount of the individual's or couple's income to be applied monthly to payment for the cost of care in an institution, there shall be deducted from the monthly income (in addition to other allowances otherwise provided under the State plan) a monthly personal needs allowance—

"(i) which is reasonable in amount for clothing and other personal needs of the individual (or couple) while in an institution, and

"(ii) which is not less (and may be greater) than the minimum monthly personal needs allowance described in paragraph (2).

"(B) In this subsection, the term 'institutionalized individual or couple' means an individual or married couple—

"(i) who is an inpatient (or who are inpatients) in a medical institution or nursing facility for which payments are made under this title throughout a month and

"(ii) who is or are determined to be eligible for medical assistance under the State plan.

"(2) The minimum monthly personal needs allowance described in this paragraph [subsection] is $ 30 for an institutionalized individual and $ 60 for an institutionalized couple

---

activities, and receives remuneration for participating in these activities," for whom the "personal needs allowance" is greater.

(if both are aged, blind, or disabled, and their incomes are considered available to each other in determining eligibility)."

As the federal regulations, 42 C.F.R. § 435.832(c)(1), confirm, the deduction is for "clothing and other personal needs of the individual while in the institution."

As noted above, the Administrative Law Judges determined that the appellant's reading of the applicable regulation was the correct one, that "the personal needs that are contemplated by the statutory personal needs allowance are incidental items used for clothing or for grooming one's body," items such as "haircuts, pedicures, shampoos and chewing gum, and not guardian's commissions or other legal fees" and, accordingly, concluded that such fees could not be designated as a part of the "personal needs allowance" and excluded from available income. We agree. Guardianship commissions are not clothing, and they are not the kind of personal needs contemplated by the COMAR 10.09.24.10D. The amount of the "personal needs allowance" is $40.00. That amount will accommodate, to be sure, the cost of personal items necessary for grooming and even some entertainment. It will not accommodate the cost of an item such as guardianship fees, which, as in this case, is likely to exceed, by far, the maximum amount of the allowance. Again, we agree with the appellant when it argues:

"... Maryland's regulatory scheme demonstrates that the Maryland regulation does not include guardianship commissions within the personal needs allowance. While the $40 provided for in the regulation may be sufficient to pay for toiletries, clothing and other small items, it clearly is not sufficient to pay for larger and more expensive items such as guardianship commissions, which, as this case demonstrates, can be hundreds of dollars. If the regulation were intended to permit payments for such items, it would have provided for a deduction larger than $40 per month. COMAR 10.09.24.10D (2)(a)(i)."

## IV.

For the first time in the Circuit Court, the appellees requested reasonable attorneys' fees of $ 600 per case, plus court costs. The trial court granted the request and signed an order directing the appellant "to allow a counsel fee in the amount of six Hundred Dollars ($600,00) to be paid unto Arthur L. Drager for services rendered by him in his capacity as Guardian of the Property." We agree with the appellant that the trial court erred in so ordering for any one of several reasons.

The appellant is correct; the attorneys fee order is ambiguous. It is not clear from the order whether, as was the case with the guardianship commissions, the court considered the fees as a part of the "personal needs allowance" and, as such, deductible from the appellees' income to determine their "available income," or whether the court awarded the attorneys' fees in respect to the prosecution of the appeal. In either event, the award can not withstand review.

Maryland Code (1984, 1999 Repl.Vol.) § 10–222(a) of the State Government Article provides that "a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision." Thus, it is the final decision of the final decision maker at the administrative level, not that of the reviewing court, that is subject to judicial review. Accordingly, the reviewing court, restricted to the record made before the administrative agency, see *Cicala v. Disability Review Bd. for Prince George's County*, 288 Md. 254, 260, 418 A.2d 205, 209 (1980), may not pass upon issues presented to it for the first time on judicial review and that are not encompassed in the final decision of the administrative agency. Stated differently, an appellate court will review an adjudicatory agency decision solely on the grounds relied upon by the agency. *See County Council of Prince George's County v. Brandywine Enterprises, Inc.*, 350 Md. 339, 349, 711 A.2d 1346, 1350–51 (1998) and cases cited in note 1, supra. *See also Md. State Retirement Pension Sys. v. Martin*, 75 Md.App. 240, 246–48, 540 A.2d 1188, 1190–92 (1988). Because the issue

of the attorneys' fees were presented to the Circuit Court for the first time and never raised in, or decided by the Administrative Law Judges, that court erred in awarding them.

 Similarly, if the fees were intended to reimburse the appellees for the cost of litigating the judicial review proceedings, the court still erred in awarding them. The "American Rule" is the name given the principle that costs awarded to a prevailing party in litigation ordinarily do not include the counsel fees of the prevailing party. *Blitz v. Beth Isaac Adas Israel Congregation,* 352 Md. 31, 39, 720 A.2d 912, 916 (1998); *Collier v. MD–Individual Practice Ass'n, Inc.,* 327 Md. 1, 13, 607 A.2d 537, 543 (1992). *See Talley v.Talley,* 317 Md. 428, 438, 564 A.2d 777, 782 (1989). We have pointed out that "[t]he power to award attorney's fees, being contrary to the established practice in this country, may be expressly conferred but will not be presumed from general language." *Talley,* 317 Md. at 438, 564 A.2d at 782, citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 759–63, 100 S.Ct. 2455, 2460–62, 65 L.Ed.2d 488, 499 (1980). This principle is no less applicable in the administrative context. Section 10–222(h) empowers the reviewing court to remand the case for further proceedings, affirm the decision, or reverse or modify it; there is no provision for the reviewing court to award attorneys' fees. If general language will not suffice as a predicate for the award of attorneys' fees, then certainly the absence of language will not suffice. By way of contrast, see Md.Code (1984, 1999 Repl.Vol.) § 10–224 of the State Government Article, "Litigation expenses for small businesses and nonprofit organizations," which, as relevant, provides:

"(c) Subject to the limitations in this section, an agency or court may award to a business or nonprofit organization reimbursement for expenses that the business or nonprofit organization reasonably incurs in connection with a contested case or civil action that:

"(1) is initiated against the business or nonprofit organization by an agency as part of an administrative or regulatory function;

"(2) is initiated without substantial justification or in bad faith; and

"(3) does not result in:

"(i) an adjudication, stipulation, or acceptance of liability of the business or nonprofit organization;

"(ii) a determination of noncompliance, violation, infringement, deficiency, or breach on the part of the business or nonprofit organization; or

"(iii) a settlement agreement under which the business or nonprofit organization agrees to take corrective action or to pay a monetary sum.

\* \* \*

"(e)(1) An award under this section may include:

"(i) the expenses incurred in the contested case;

"(ii) court costs;

"(iii) counsel fees; and

"(iv) the fees of necessary witnesses."

*See also* Md.Code (1997, 1999 Repl.Vol.) § 5–111 of the Commercial Law Article ("Reasonable attorney's fees and other expenses of litigation must be awarded"); Md.Code (1973, 1998 Repl.Vol.) § 10–410 of the Courts and Judicial Proceedings Article ("[E]ntitled to … a reasonable attorney's fees and other litigation costs reasonably incurred"); Md.Code (1980, 1998 Repl.Vol.) § 10–120 of the Financial Institutions Article ("All attorneys' fees, costs, and expenses … shall be assessed as part of any judgment"); Md.Code (1984, 1999 Repl.Vol.) § 10–510 of the State Government Article ("As part of its judgment … [court] may assess … reasonable counsel fees and other litigation expenses…."); Md.Code (1993, 1997 Repl.Vol.) § 5–311 of the State Personnel and Pensions Article ("[C]ourt may award costs of litigation and reasonable attorney's fees….").

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE BOARD OF REVIEW IN EACH OF

THESE CASES. COSTS TO BE PAID BY THE APPEL-LEES.