567 A.2d 929

## MOTOR VEHICLE ADMINISTRATION

v.

## Thomas Noble MOHLER, III.

## MOTOR VEHICLE ADMINISTRATION

v.

## Kurt Dennis TRITAIK.

## Nos. 52, 53, Sept. Term, 1989.

Court of Appeals of Maryland.

Jan. 8, 1990.

220

Edward R.K. Hargadon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Risselle Rosenthal Fleisher, Asst. Atty. Gen., all on brief), Baltimore, for petitioner.

Timothy F. Maloney (Edward P. Camus, Camus & Maloney, all on brief), Riverdale, for respondent in No. 52.

Peter S. O'Neill, Glen Burnie, for respondent in No. 53.

Argued before MURPHY, C.J., ELDRIDGE, JJ., COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Special Appeals of Maryland (retired) Specially Assigned.

ADKINS, Judge.

These two cases, one tried in the Circuit Court for Prince George's County and the other in the Circuit Court for Anne Arundel County, both concern the interpretation of Maryland Code (1987 Repl.Vol.), § 16–206(a)(1)(ii) of the Transportation Article. We shall conclude that the circuit courts properly held that the appellees could not be considered "unsafe" drivers under that provision of the code.[1] Before explaining why we do so, we recount the somewhat different factual background in each case.

## I. Background

### A. No. 52—MVA v. Mohler

On 5 June 1986, a United States Magistrate, sitting in the United States District Court for the District of Maryland, convicted Thomas Noble Mohler, III, (Mohler) of driving under the influence of intoxicating liquor in violation of the provisions of former 36 C.F.R. § 50.28(c).[2] The Maryland Motor Vehicle Administration (MVA) thereafter conducted a hearing to determine whether to suspend or revoke Mohler's motor vehicle operator's license pursuant to § 16–206(a)(1), which permits the MVA to impose one of those sanctions "on a showing by [MVA's] records or other sufficient evidence that the ... licensee ... (ii) Is an unfit,

---

1. In No. 52, Mohler's case, an evidentiary issue is raised as well. We shall deal with that in Part III of this opinion.

2. Former 36 C.F.R. § 50.28(c) provided: "No person who is under the influence of intoxicating liquor ... shall operate or drive a motor vehicle of any kind in any area covered by this part."

unsafe or habitually reckless or negligent driver of a motor vehicle." [3]

The MVA hearing examiner suspended Mohler's license for 15 days and placed him on a three-year alcohol restriction, tersely concluding that Mohler was "subject to" § 16–206(a)(1)(ii). On appeal to the Circuit Court for Prince George's County, the parties stipulated that the hearing officer based his decision "solely upon [Mohler's] conviction of a violation of 36 Code of Federal Regulations 50.28(c)." They also stipulated that "[n]o other evidence concerning appellant's fitness to drive, safety as a driver, or habitual recklessness or negligence was considered by the hearing examiner."

Judge Woods, of the Circuit Court for Prince George's County, found "that the Administration could not reasonably conclude that one with a single conviction for driving under the influence of alcohol is [an] unfit, unsafe, or habitually reckless or negligent driver." This Court granted the MVA's petition for certiorari.

## B. No. 53—MVA v. Tritaik

On 27 June 1987, Kurt Dennis Tritaik (Tritaik) was on his way to Ocean City, Maryland. The weather was rainy and it was about 1:00 a.m. He was travelling eastward in the westbound lane of Route 90 when he collided head-on with another car. The driver of the other car subsequently died as a result of the accident. Tritaik was convicted of violating Maryland Code (1987 Repl.Vol.), § 21–305 of the Trans-

---

3. Section 16–205 of the Transportation Article permits the MVA to revoke or suspend the license of any individual who is convicted of certain violations of § 21–902, which penalizes driving while intoxicated, while under the influence of alcohol, or while under the influence of a controlled dangerous substance. Mohler, of course, was *not convicted of any violation of § 21–902,* but instead a violation of 36 C.F.R. § 50.28(c). *See* note 2, *supra.* The legislature has not seen fit to extend the sanctions of § 16–205 to a driving-under-the-influence conviction imposed by a federal court pursuant to the Code of Federal Regulations. As a consequence, in Mohler's case, the MVA proceeded under § 16–206(a)(1)(ii) not § 16–205.

portation Article, for driving to the left of the center line of the road in an unauthorized manner.

Following the conviction, the MVA charged Tritaik with being "an unfit, unsafe, or habitually reckless or negligent driver" under § 16–206(a)(1)(ii), and conducted a hearing on this charge on 1 February 1988. Tritaik's prior record was in evidence,[4] but the hearing examiner focused on the 27 June 1987 collision. Tritaik, who was severely injured in the collision, testified that he did not recall the sequence of events immediately prior to and during the accident. The accident report indicated that Tritaik was in the process of passing three cars when he collided with the oncoming car.

The hearing officer noted that the accident report stated that Tritaik had been drinking. Tritaik admitted to having two beers with dinner about 7:00 p.m. (six hours before the accident); no charges, however, were ever brought against Tritaik for the use of alcohol. There was evidence from two of Tritaik's neighbors that Tritaik was not known to drink to excess and "was never observed in an intoxicated condition." The hearing officer concluded that Tritaik was "involved in an accident in which there had to be a degree of recklessness because [he] did cross over into the next man's lane and had a head-on collision." The examiner also stated that he felt that Tritaik "operated that vehicle in [a] wanton and reckless manner." He then revoked Tritaik's license.

Tritaik appealed to the Circuit Court for Anne Arundel County. Judge Goudy reversed and vacated the MVA's decision. This Court issued a writ of certiorari to the circuit court at the request of the MVA.

II. Construction and Application of § 16–206(a)(1)(ii)

A. Mohler's Case

■ The § 16–206(a)(1)(ii) issue in Mohler's case is clear cut: Can a single conviction of driving under the influence

---

4. The prior record (in addition to the 1987 conviction) consisted of two failures to obey traffic signals or devices (1980 and 1981) and speeding (1984). One of the "failures to obey" resulted in an accident.

of intoxicating liquor serve, without more, as the factual predicate for a finding that a driver is "unsafe" within the meaning of the subsection?[5] We hold that Judge Woods construed and applied the statute correctly when he answered that question in the negative.

■ As we have noted, § 16–206(a)(1)(ii) reads:

(a)(1) The Administration may suspend, revoke, or refuse to issue or renew the license of any resident ... on a showing by its records or other sufficient evidence that the applicant or licensee: ... (ii) Is an unfit, unsafe, or habitually reckless or negligent driver of a motor vehicle.

When construing a statute, the duty of the reviewing court is to determine the goal of the legislature and to effectuate that objective. *Rucker v. Comptroller of the Treasury*, 315 Md. 559, 564, 555 A.2d 1060, 1063 (1989). The court must divine the legislative goal or purpose by examining the language of the statute "in the context within which it was adopted." *Rucker*, 315 Md. at 565, 555 A.2d at 1063. *See State v. Runge*, 317 Md. 613, 566 A.2d 88, 92–93 (1989).

The statute before us went through several metamorphoses before reaching its current form. Under the 1918 Code of Maryland, the commissioner of Motor Vehicles could, at his discretion, suspend or revoke the license of a person holding a Maryland driver's license who was "convicted of any violation of any of the provisions of this sub-title." Md.Code (1918), Art. LVI, § 145. The statute also gave the commissioner the discretion to revoke or suspend an operator's license "for any cause which he may deem sufficient." *Id.*

---

**5.** The hearing officer in Mohler's case did not specify whether he found Mohler unsafe, unfit, or habitually reckless or negligent. Judge Woods concluded that the single conviction was insufficient to support a finding of the existence of any of those conditions. The MVA, in its brief, advises that it "does not contest the lower court's ruling insofar as it ruled that [Mohler's] conviction, standing alone, does not indicate that the driver is unfit or habitually reckless or negligent." MVA's sole contention under § 16–206(a)(1)(ii) is that it was error to hold that the single conviction was "not a reasonable basis upon which MVA could conclude that a driver is 'unsafe.'"

The "unfit" and "unsafe" language appeared in 1947. The Department of Motor Vehicles retained the authority to revoke or suspend a license for any violation of the code and, in addition, could do so "for any other cause or reason which, in the opinion of the Department renders the holder of any such license ... an unfit or unsafe person." Md. Code (1947 Cum.Supp.), Art. 66½, § 95. This version of the statute deleted the broad language which gave the commissioner the power to revoke or suspend a license "for any cause which he may deem sufficient."

In 1970, the legislature again revised the provision. The grounds for suspension or revocation became:

a showing by [the department's] records or other sufficient evidence that the licensee:

(1) Is either an unfit or unsafe driver.

(2) Has been convicted with such frequency of violations of the traffic regulations ... as to indicate an intent to disregard the traffic laws and the safety of other persons

...

(3) Is an habitually reckless or negligent driver of a motor vehicle;

(4) Is incompetent to drive a motor vehicle;

(5) Has permitted an unlawful or fraudulent use of the license;

(6) Has committed an offense in another state....

Md.Code (1970 Repl.Vol.), Art. 66½, § 6–206. This revision divested the department of its authority to revoke or suspend an operator's license for any violation of the code. In the 1977 code revision process, the revisors consolidated the language in former § 6–206. Paragraphs (1) and (3) were combined, and paragraph (4) was deleted. Md.Code (1977), § 16–206 of the Transp. Art. Those changes put the provision in its current form.

The evolution of § 16–206 reveals the legislature's goal of limiting the department's (now the MVA's) discretion to revoke or suspend licenses. The legislature first took away the commissioner's (department's) power to revoke or sus-

pend a license for any reason that that official (it) found sufficient, and later took away the department's power to revoke or suspend a license for any motor vehicle violation under the statute. The objective of these changes was to establish a tighter, more specific standard for revocation or suspension.

Moreover, the statutory development shows that the legislature meant to attach distinct meanings to "unsafe," "unfit," and the two "habitual" categories. The 1977 revisor's note to § 16–206 advises that the "reference to an 'incompetent' driver [in former Art. 16½, § 6–206 was] deleted as superfluous in light of the references to an 'unfit,' or 'unsafe' driver." Ch. 14, Acts of 1977. We may conclude that the legislature believed that "unsafe" and "unfit" together encompass the meaning of "incompetent" and "unsafe" and "unfit" are not intended to be synonyms; otherwise, the legislature would have deleted one of those words as well. Lack of fitness has to do with incompetence: physical or mental unsoundness for a particular purpose. *See* Random House Dictionary of the English Language at 2068 (2d ed. 1987); Oxford English Dictionary Vol. XIX at 19 (2d ed. 1989). "Unsafe" means, among other things, "exposing to danger." Webster's Third New International Dictionary at 2509 (1976); Oxford English Dictionary Vol. XIX at 180 (2d ed. 1989). An unfit driver may be an unsafe one, but an unsafe one is not necessarily an individual who is subject to a physical or mental condition that impairs his or her ability to drive.

As we have said, we deal here with a driver found by the MVA to be "unsafe." But the single conviction upon which the hearing examiner relied could not be the basis for that finding.

We do not rule out the possibility that a single incident might, in some circumstances, provide a sufficient foundation for a finding of "unsafe." But a conviction of driving under the influence is not even complete evidence of a single incident. The surrounding circumstances are unknown. We do not know how Mohler was driving, to what

extent he was under the influence, his proclivity, if any, to drink or any other information that might bear upon his "unsafeness" as a driver. The hearing examiner must determine that the licensee is "unsafe" at the time of the hearing. The statute is a measure designed to keep unsafe drivers off the road, at least for a time. Hence, it must be determined that the licensee is unsafe at the time of revocation or suspension. The statute's history supports this reading of it.

What is now § 16–206 traces back to § 6–206 of the Uniform Vehicle Code. *See Uniform Vehicle Code* (Revised 1962). While the Maryland statutory provisions are not identical to those of the Uniform Code, and never have been, the purpose of both is the same. With respect to the physical or mental disability ground for sanction, it has been said that "[i]f any broad generalization is possible, it is that in order to support the administrative denial or withdrawal of driving privileges ... there must be competent, substantial evidence of the existence of some tangible disease or defect which bears, or could in the future bear, adversely upon the particular motorist's capacity to drive safely." 7A Am.Jur.2d. *Automobiles and Highway Traffic* § 116 at 284 (1980). In other words, where unfitness is the criterion, the unfitness must be a present one ... one that "bears, or could in the future bear," upon the licensee's "capacity to drive safely." The same is true when "unsafe" is the criterion.

Thus, the "unsafe" standard requires the hearing examiner to determine whether the licensee possesses some characteristic that is likely to make him an unsafe driver. The focus is on the driver, not on the offense of which the driver was convicted. For this reason, MVA's reliance on out-of-state cases that allow suspension or revocation when a driver has been convicted of a serious offense is not helpful. *See, e.g., Crow v. Shaeffer,* 199 N.W.2d 45 (Iowa 1972) (I.C.A. § 321.210(7) authorizing suspension of licensee who has "committed a serious violation of the motor vehicle laws of this state" allows suspension based on single conviction

of reckless driving, when details of reckless driving established); *Ralston v. State,* 60 Wash.2d 535, 374 P.2d 571 (1962) (R.C.W. 46.20.290(4) authorizing suspension of license of one who "has committed a serious violation of the motor vehicle laws of this state" permits suspension based on single drunk driving conviction).

Those statutes make the nature of the violation the test for suspension or revocation. Maryland, at least where § 16–206(a)(1)(ii) is concerned, looks to the characteristics of the driver, not just the gravity of the motor vehicle violation. To be sure, the nature of a violation may have some bearing on whether a driver may be considered unsafe, as may facts that disclose the details of the violation. *See Bungardeanu v. England,* 219 A.2d 104 (D.C.1966) (facts that drunk driver struck two parked cars and left scene of accident sufficient to support a finding of "flagrant disregard for the safety of persons or property" under D.C. Traffic and Motor Vehicle Regs. § 5(a)). But under our carefully limited statute, Mohler's single conviction of driving under the influence is insufficient in and of itself, to sustain the hearing examiner's finding that Mohler was an "unsafe" driver. Judge Woods did not err when he reversed the hearing examiner on this point.[6]

## B. Tritaik's Case

As reference to Part I.B, *supra,* will reveal, the facts upon which Tritaik's revocation was based showed more than a single conviction. There was, of course, a conviction for driving to the left of the center line of the road. But in addition, the hearing examiner learned some facts about the accident in which Tritaik was involved (including the death

---

**6.** Mohler also argues that the MVA was required to reexamine him before suspending his license. His contention is based primarily on § 16–207(a)(1) which declares that "[t]he Administration may require a licensee to submit to reexamination" if, among other things, "(ii) . . . the Administration has good cause to believe that the licensee is unfit, unsafe, or otherwise not qualified to be licensed." But § 16–207(a)(1), as its language discloses, does not mandate anything. It simply gives the MVA an alternate path to suspension or revocation.

of another ·driver) and about some of Tritaik's activities shortly before the accident. The MVA insists that these additional facts are sufficient to uphold findings of both "unsafe" and "habitually negligent." [7]

As in Mohler's case, the hearing examiner was somewhat nonspecific in explaining just what was the basis for his suspension order. Maryland Code (1984), State Government Article, § 10–214 (Part of the Administrative Procedure Act) directs in no uncertain terms that:

(b)(1) A final decision in a contested case shall contain separate statements of:

(i) the findings of fact; and

(ii) the conclusion of law.

(2) If the findings of fact are stated in statutory language, the final decision shall state concisely and explicitly the facts that support the findings.

If hearing examiners followed this directive scrupulously, it would be helpful to us, to the circuit courts, ·and to the hearing examiners themselves, for a careful statement of facts and conclusions would force the examiner to focus on the evidence presented and its sufficiency to support a particular conclusion.

In any case, § 10–214(b) was given somewhat short shrift here. The examiner recited several pieces of information. He ·made few findings of fact, except to state that

You [Tritaik] had left your lane to the other lane and hit a head-on—had a head-on accident in which there was a fatality and you had been drinking on this occasion.

Later on, the examiner opined that he couldn't tell to what extent the consumption of alcohol had contributed to the accident. His "inescapable conclusion" (as we have recounted) was that

---

7. MVA does not contend that Tritaik was "unfit" or "habitually reckless."

You were involved in an accident in which there had to be a degree of recklessness because you did cross over into the next man's lane and had a head-on collision.

He summarized:

The evidence before me is that you did cross into the other lane on a dark wet night and did strike the victim's car head-on. The victim, Robert Cannon, did die. I think greater [care] should have been used due to the time and the road conditions. Today, ... I do feel that you operated the vehicle in [a] wanton and reckless manner and the license will be revoked.

 The examiner's language at once disposes of the MVA's contention that there was a finding of habitual recklessness. For something to be habitual, it must be done—or not done—over some period of time. There must be some evidence of habit. Whether Tritaik's prior record[8] could constitute enough evidence of habitual recklessness, we need not decide. The examiner did not rely on that record. He relied *only* on the event of 27 June 1987. When we review an administrative action, we may uphold the agency order only if " 'it is sustainable on the agency's findings and for the reasons stated by the agency.' " *Baltimore Heritage v. City of Baltimore*, 316 Md. 109, 113, 557 A.2d 256, 258 (1989) (quoting *United Steelworkers v. Bethlehem Steel*, 298 Md. 665, 679, 472 A.2d 62, 69 (1984)). The findings and reasons disclosed here do not permit us to sustain any conclusion as to Tritaik's habitual negligence, even if the examiner intended to so conclude.

 As to "unsafe," we are left with a single incident as a basis for the finding. The MVA tells us that the death of another driver supports a finding of "unsafe." It does not, on this record. The death was a tragic event, but it tells us virtually nothing about why Tritaik might be found to possess the ongoing characteristics of an unsafe driver. Motor vehicle fatalities may occur even though no driver

---

8. *See* note 3, *supra.*

breaks the law; on the other hand, a case of the most egregiously unsafe driving might cause no fatality. The fact that § 16–207(a)(1)(i) gives the MVA discretion to call a licensee in for reexamination if there has been a fatal accident has no bearing on § 16–206(a)(1)(ii). As we already have explained, the two sections represent distinct and alternative routes to suspension or revocation.

The MVA relies on *Cutlip v. Connecticut Motor Vehicle Commissioner*, 168 Conn. 94, 357 A.2d 918 (1975). It cites the case for the proposition that a driver determined to be at fault in a fatal accident should be removed from the highway. This decision, however, was made under a Connecticut statute (Gen.Stat. § 14–111(c)) that specifically authorized revocation or suspension in the event of a fatal accident, *if* the licensee was found responsible for the accident, and *if* the licensee had caused or contributed to the death by virtue of a violation of the Connecticut Motor Vehicle laws or by negligence or carelessness. Our statute is not remotely like the Connecticut statute, and in any case, the hearing examiner here did not make findings like those made in *Cutlip*.

The MVA's other out-of-state cases suffer from the same deficiency as the "serious conviction" cases we discussed in Part II.A: the underlying statutory schemes are vastly different from Maryland's. Moreover, all involve facts quite distinct from those here. *See, e.g., Hernigle v. Macduff,* 305 N.Y. 367, 113 N.E.2d 520 (1953) (finding that accident causally related to respondent's drowsy condition, and that driver was aware he was dosing off, but continued to drive); *Griffin v. Muzio,* 10 Conn.App. 90, 521 A.2d 607, *cert. denied,* 203 Conn. 805, 525 A.2d 520 (1987) (same statute as that involved in *Cutlip* ); *Farrell v. Adduci,* 138 A.D.2d 944, 526 N.Y.S.2d 686 (1988) (drinking driver exceeded speed limit by at least 15 miles per hour, crossed center line, and crashed into guard rail, killing two passengers); *Commonwealth v. Fisher,* 184 Pa.Super. 75, 132 A.2d 739 (1957) (driver had 10–12 beers, and fell asleep at wheel,

causing vehicle to travel 445 feet, striking posts and guard rails before stopping).

We venture no opinion as to whether facts like these would justify suspension or revocation under § 16–206(a)(1)(ii). We point out only that the facts pertaining to Tritaik are different. They do not show that Tritaik, when he appeared before the examiner, possessed any characteristics likely to render him an unsafe driver. Accordingly, Judge Goudy did not err in reversing the hearing examiner.

### III. An Evidentiary Issue

Remaining for disposition is the MVA's contention that Judge Woods erred in admitting certain evidence during Mohler's appeal. *See* note 1, *supra.*

At the circuit court hearing, Mohler produced one Mary Rita Miller, a Ph.D. affiliated with the English Department at the University of Maryland. Mohler qualified Dr. Miller as an expert in linguistics. He then, over the MVA's objections, had her testify as to the meanings of "unsafe" and "unfit." Her testimony consisted chiefly of stating dictionary definitions of the words.

██ The MVA avers that this procedure violated State Government Article § 10–215(e). This subsection permits additional evidence on judicial review of an administrative agency decision only if, among other things, the party offering the evidence applies for leave to do so prior to the court hearing (§ 10–215(e)(1)(i)) and the court is satisfied that there were good reasons for failure to offer the evidence before the agency (§ 10–215(e)(1)(ii)(2). Mohler satisfied neither of these preconditions. Moreover, if the criteria of § 10–215(e) are met, the additional testimony is heard before the agency, not the court. *Consumer Protection v. Consumer Pub.,* 304 Md. 731, 749, 501 A.2d 48, 58 (1985).

Assuming, without deciding, that § 10–215(e) applies to a situation in which the additional evidence does not relate to the merits of a case, but only to the meaning of words in a statute, Judge Woods erred when he admitted the evidence

in the circuit court proceeding. But to remand this case to the circuit court to allow Judge Woods to decide whether the evidence should come in under the § 10–215(e) criteria, and in the event of a favorable decision, to send the case back to the MVA to consider the evidence, *Howard County v. Davidsonville Civic Ass'n*, 72 Md.App. 19, 47, 527 A.2d 772, 786, *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987), on the facts of this case would be inconsistent with judicial economy and efficiency.

■ The record contains not the slightest hint that Judge Woods considered Dr. Miller's dictionary readings in any respect. Indeed, he could have obtained much the same information by reading dictionaries himself. In his written opinion and order of court, he made no attempt to define "unsafe" or "unfit." He simply found that "given the clear and unambiguous language of [§ 16–206(a)(1)(ii) ] ... the Administration could not reasonably conclude that one with a single conviction for driving under the influence of alcohol is an unfit, unsafe, or habitually reckless or negligent driver." But the error in admitting the evidence could not have prejudiced the MVA. "It is a fundamental rule of appellate procedure that a reviewing court will not reverse upon rulings on evidence where the ruling did not result in prejudice to the complaining party." *Johnson v. State*, 303 Md. 487, 528–529, 495 A.2d 1, 22 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *accord Tully v. Dasher*, 250 Md. 424, 436, 244 A.2d 207, 214 (1968).

JUDGMENTS IN NO. 52 AND NO. 53 AFFIRMED. COSTS TO BE PAID BY THE MOTOR VEHICLE ADMINISTRATION.