568 A.2d 868

Jeffrey C. WEIDIG, et al.

v.

Walter R. TABLER, et al.

No. 382, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Feb. 1, 1990.

Daniel L. Shea (Albert D. Brault, Janet S. Zigler and Brault, Graham, Scott & Brault, on the brief), Rockville, for appellants.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees, Tabler and Terrell.)

Deborah A. Vitale (Michael J. Miller, Jacobi & Miller, Alexandria, Va., Ronald B. Bergman and Pickett, Houlon & Berman, Hyattsville, on the brief), for appellee, Crites.

Argued before WILNER, ROSALYN B. BELL and WENNER, JJ.

WENNER, Judge.

In this appeal from the Circuit Court for Montgomery County, we shall hold that a claim of medical malpractice against a non-health care provider, where joined with and incorporated in an arbitrable claim against a health care provider, is subject to mandatory arbitration under Maryland's Health Care Malpractice Claims Act (the Act). Md. Cts. & Jud. Proc.Code Ann. (1989 Repl.Vol.) § 3–2A–01 *et seq.* At the outset, however, we reject appellant's threshold contention that the circuit court erred when it refused to issue a Writ of Mandamus to Walter R. Tabler, Director of the Health Claims Arbitration Office, directing that he dismiss from arbitration proceedings appellee's claim against the non-health care provider.

Appellee, Bradley Crites, sought the professional services of Jeffrey C. Weidig, M.D., for the purpose of receiving a hair transplant. Appellant, Joseph Kies, is an employee of Dr. Weidig. He is also the office manager of Jeffrey C. Weidig, M.D., Chartered.[1] Appellee had an initial consultation with appellant. Appellant examined appellee's scalp

---

[1] According to the record, Kies gave prospective clients consultations to determine their candidacy for hair transplant procedure. Kies also assisted Weidig in surgery by inserting grafts, handling surgical instruments, and directing the hair implants in the proper direction.

and determined that appellee was a suitable candidate for hair transplant surgery. At the initial consultation, appellant informed appellee of the costs and potential risks of the procedure.

Suffice it to say that the surgery proved to be unsuccessful. As a result, appellee filed with the Health Claims Arbitration Office a complaint for medical malpractice against the appellant, Weidig, and Weidig's corporation. Appellant subsequently moved for summary judgment on the grounds that, as a non-health care provider, the claim against him was beyond the scope of the Act. The panel chairman denied the motion. Undaunted, appellant sought from the circuit court a writ of mandamus to prohibit the Health Claims Arbitration Office from exercising jurisdiction over him. The circuit court declined to issue the Writ, and this appeal ensued.

## Mandamus

The function of mandamus is to compel an inferior tribunal, a public official, or an administrative agency to perform a function or duty to which the person applying for the Writ has a clear legal right. *Dorchester General Hospital v. Sober,* 79 Md.App. 110, 115, 555 A.2d 1074 (1989). Mandamus is an extraordinary remedy, reserved for those claims where there is no other available procedure for obtaining review, or where the action complained of is arbitrary and capricious. *Id.* In any event, the decision to deny a writ of mandamus will be overturned by us only upon a showing of an abuse of discretion. *Ipes v. Board of Fire Commissioners of Baltimore,* 224 Md. 180, 185–186, 167 A.2d 337 (1961).

In the case at hand, appellant may seek upon disposition of the arbitration proceedings review of the denial of his motion for summary judgment pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 3–2A–06 and 3–224(b)(4). *Dorchester, supra,* 79 Md.App. at 118, 555 A.2d 1074. Accordingly, we hold that the circuit court did not abuse its discretion when it declined to issue the Writ of Mandamus sought by

appellant. Nevertheless, we view the underlying question concerning the jurisdiction of the Act over non-health care providers in circumstances similar to those *sub judice* to be of such importance so as to require its prompt resolution.

### The Statute

The Health Care Malpractice Claims Act is applicable to "[a]ll claims, suits, and actions, including cross claims, third party claims ... by a person against a health care provider for medical injury allegedly suffered by the person.... § 3–2A–02(a)(1). Medical injury means an injury arising out of or resulting from the rendering or failure to render health care. § 3–2A–01(f). A health care provider is defined by the Act as

> a hospital, a related institution as defined in § 19–301 of the Health–General Article, a physician, an osteopath, an optometrist, a chiropractor, a registered or licensed practical nurse, a dentist, a podiatrist, and a physical therapist, licensed or authorized to provide one or more health care services in Maryland. "Health care provider" does not mean any nursing institution conducted by and for those who rely upon treatment by spiritual means through prayer alone in accordance with the tenets and practices of a recognized church or religious denomination.

§ 3–2A–01(e). With these provisions clearly in mind, as well as all of the other provisions of the Act, we turn to the question at hand.

The parties concede, as they must, that Weidig falls within the statutory definition of a health care provider. For the purpose of this appeal, we shall regard appellant as a non-health care provider.[2] Appellee filed a complaint with the Health Claims Arbitration Office for medical injury sustained by him as a result of the alleged negligence of

---

**2.** We do not decide whether appellant is covered under the Act by virtue of having been "authorized [by Weidig] to provide one or more health care services in Maryland." § 3–2A–01(e).

both Weidig and appellant. What we are called upon to decide then, is whether, under circumstances such as those in the case *sub judice*, a non-health care provider, when joined as a party defendant with a health care provider in an action to recover for medical injuries arising out of the rendering or failure to render health care, is included within the purview of the Act. Upon the record before us, as we shall explain, we believe that such a claim is subject to the Act.

■ In order to reach our conclusion, it was necessary to engage in the familiar exercise of statutory construction. The primary objective of such a task, of course, is to ascertain and carry out the real intention of the Legislature. *State Department of Assessments and Taxation v. Belcher*, 315 Md. 111, 119, 553 A.2d 691 (1989). As a beginning point, we are accustomed to discerning legislative intent from the plain meaning of the words used in the statute. *Id.* It is upon the plain meaning rule that appellant relies in arguing that a non-health care provider is excluded from coverage under the Act. Even if we were to assume, for the sake of argument, that this is so, our quest to discover legislative intent is not at an end. That statutory language is clear and unambiguous does not preclude us from consulting external evidence to determine the goal or purpose of the Act. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–515, 525 A.2d 628 (1987). Our focus then becomes the context within which the Act was enacted, as evidenced by committee reports, the bill's title and function paragraphs, and "other material that fairly bears on the fundamental issue of legislative purpose or goal." *Id.* at 515, 525 A.2d 628; *see also Motor Vehicle Administration v. Mohler*, 318 Md. 219, 225, 567 A.2d 929, (1990). What *Kaczorowski* and its progeny teach us is that the rules of construction should not be employed to defeat the legislative objective. *Belcher, supra,* 315 Md. at 119, 553 A.2d 691. When we apply these principles to the circumstances *sub judice*, a review of the legislative history of the Act con-

vinces us that the plain meaning of the words used should not be afforded their literal effect.

## Legislative Intent

In 1976, the Maryland General Assembly adopted legislation requiring mandatory arbitration of claims of medical malpractice before resort could be had to a court of law. The impetus for the enactment of the legislation was what has often been referred to as the malpractice insurance "crisis" pervading the health care industry. This "crisis" manifested itself in a dramatic increase in medical malpractice claims. As a result, the medical profession was faced not only with an increase in the cost of professional liability insurance, but with the threatened exodus of major insurance companies from the professional liability insurance market. The Health Care Malpractice Claims Act was but one of several statutes adopted by the Legislature to preserve the health care delivery system in Maryland.[3]

The theme that pervades the *Report of the Medical Malpractice Insurance Study Committee* (January 6, 1976), was the need for some type of dispute resolution mechanism to screen medical malpractice claims before they would reach the courts. The prime objective of such legislation, then, was to reduce health care costs for patients as well as for physicians, by requiring more prompt resolution of medical malpractice claims before more accessible non-judicial forums. *Report* at p. 1. At least in theory, mandatory arbitration would reduce the number of malpractice claims that would ultimately reach the courts. In the Committee's view, an arbitration panel's determination in favor of the claimant would encourage settlement of the claim. On the other hand, those claimants with non-meritorious claims would be dissuaded from pursuing them fur-

---

**3.** *See* Ch. 544 of the Laws of Maryland, 1975 (creating the means whereby physicians could obtain liability insurance); Ch. 235, § 2 of the Laws of Maryland, 1976 (governing health care malpractice insurance); Ch. 545, § 1 of the Laws of Maryland, 1975 (limitations of actions against physicians).

ther in court. *Report* at p. 3. Furthermore, because the health care profession would be represented on the arbitration panel, the parties would obtain a more expert opinion on the question of negligence and at the same time avoid the emotionalism of juries. *Id.*

We are cognizant from the panoply of materials before the General Assembly that the driving forces behind the adoption of the Act were the health care and insurance industries. Nevertheless, we do not think that the Legislature intended that mandatory arbitration benefit those two groups alone. As we see it, the interests of claimants in obtaining a determination of their claims at an early stage in the dispute was of equal importance to the Legislature. *See also* National Conference of State Legislatures, Policy Position Paper (Oct.1975) (the malpractice insurance "crisis" has an equal effect on claimants, whose claims take years to resolve and consequently result in less recovery); Letter from George B. Warner to the Hon. Harry McGuirk (Feb. 20, 1976) (endorsing Senate Bill 436 on behalf of the American Physical Therapy Association of Maryland; the mechanism and benefits would "substantially provide a more equitable and timely benefit to both the providers and recipients of health care in the State of Maryland."); Statement of Kenneth S. Abraham, Esq., Vice Chairman, Maryland State Bar Association Special Committee to Consider Problems Related to Medical Malpractice in Maryland (Feb. 24, 1976) (endorsing Senate Bill 436 as a method of reducing the high costs of adjudicating claims of medical malpractice by encouraging resolution of disputes prior to full scale trial in the courts).

Moreover, the title of ch. 235 of the Acts of 1976 provides that the Act was "for the purpose of providing for a mandatory arbitration system for *all* medical malpractice claims in excess of a certain amount." (Emphasis supplied.) From all of this, "it would appear that the Legislature contemplated a far-reaching requirement to arbitrate medical malpractice claims." *Group Health Association, Inc. v. Blumenthal,* 295 Md. 104, 113, 453 A.2d 1198 (1983).

Case Law

Only a handful of cases in Maryland have interpreted the scope of the Act's jurisdiction. *Blumenthal, supra,* is one such case. *Blumenthal* involved several questions certified to the Court of Appeals arising out of a medical malpractice action filed in the United States District Court for the District of Maryland. Of importance to our analysis in the case *sub judice* was the question of the arbitrability of a claim against a Health Maintenance Organization (HMO) that was not a health care provider. In the district court action, Patricia Blumenthal sought to prove that a physician and others employed by an HMO were negligent in treating her, and that the HMO was vicariously liable. *Id.* at 111, 453 A.2d 1198. The Court held that the claims were arbitrable. In reaching that conclusion, the Court gave an expansive reading to the edict of § 3–2A–02(a)(1) that "all claims" be subject to arbitration. Such a reading was held to encompass a claim premised upon respondeat superior liability against a non-health care provider for the primary negligence of an employee-health care provider. *Id.* at 112, 453 A.2d 1198. What the Court found telling was that the "aggregate of operative facts" giving rise to the action was the alleged malpractice of the health care providers. *Id.*

We agree with appellant that the doctrine of respondeat superior is inapplicable to the circumstances *sub judice.* Nevertheless, we find nothing in *Blumenthal* to suggest that a claim against a non-health care provider should not be arbitrable along with a claim against a health care provider where the claim stems from an aggregate of facts alleging the negligent performance of a health care procedure. Indeed, we believe that the Court's reasoning in *Blumenthal* would countenance such a conclusion.[4]

---

4. Unfortunately, when faced with a markedly similar question in *Smith Laboratories v. Teuscher,* 310 Md. 676, 531 A.2d 300 (1987), the Court of Appeals did not reach the issue. There, a claimant instituted arbitration proceedings for medical negligence against a physician and a hospital. The physician filed a third party products liability claim against a pharmaceutical manufacturer, Smith Laboratories.

That all claims arising from and joined with a claim of medical negligence are arbitrable is evidenced by other Maryland appellate decisions. *See Nichols v. Wilson,* 296 Md. 154, 158–159, 460 A.2d 57 (1983) (to avoid piecemeal resolution of controversies, claims of assault and battery and intentional infliction of emotional distress may be arbitrable as arising from and joined with a claim of medical negligence that is itself arbitrable); *Cannon v. McKen,* 296 Md. 27, 38, n. 4, 459 A.2d 196 (1983) (claims of breach of warranty and strict liability which are not themselves arbitrable may be arbitrable where related to and incorporate a negligence claim); *Brown v. Rabbitt,* 300 Md. 171, 176, 476 A.2d 1167 (1984) (breach of contract claim against health care provider is covered under the Act where breach arose from a failure properly to render health care). We see no reason whatever why this willingness to include as arbitrable claims not for, but joined with or evolving from, a claim of medical negligence, should not be extended to claims against a non-health care provider where the claims are related to and are incorporated in an arbitrable claim against a health care provider. That is, of course, precisely the situation with which we are faced.

We have found but one other jurisdiction that has considered under what circumstances non-health care providers may be subject to mandatory arbitration. Unlike Maryland, Pennsylvania's Health Care Services Act expressly provides that an arbitration panel has jurisdiction to entertain any claim against a non-health care provider that has been joined with a health care provider as a party defendant in a

---

Smith later filed a declaratory judgment action contending that, as a non-health care provider, the claim against it was not arbitrable. The circuit court found that the claim was arbitrable. It reasoned that Smith was subject to arbitration because "the aggregate of operative facts giving rise to the action encompassed a claim against a health care provider for medical injury." *Id.* at 679, 531 A.2d 300. Smith appealed. Meanwhile, the claimant settled with the physician and the hospital. The Court held that, absent any claim pending in arbitration against a health care provider, the claim against Smith was not subject to arbitration. *Id.* The Court neither approved nor disapproved of the circuit court's reasoning.

medical malpractice action. 40 P.S. § 1301.309. Such jurisdiction has, however, been limited to include only those persons or entities that are closely associated with the furnishing of medical care. *Morrison v. Therm–O–Rite Products Corporation,* 468 F.Supp. 1295, 1297, *aff'd without opin.,* 612 F.2d 574 (1979), (manufacturers of drugs or medical instruments are within the class of non-health care providers subject to the Act). *See also Gillette v. Redinger,* 34 Pa.Commw. 469, 383 A.2d 1295 (1978) (snowball thrower who allegedly caused injury giving rise to medical injury was not kindred to health care provider and thus was not covered by the Act). What we glean from these cases decided under the Pennsylvania Act is that the key to arbitrability of claims against non-health care providers depends upon the rendering or failure to render health care.

## Summary

We believe that our construction of the Act so as to encompass appellee's claim against appellant furthers the intent of the Legislature and is consistent with the case law bearing on the scope of the Act. Moreover, mindful of another tenet of statutory construction, we think that it would be unreasonable, illogical, and inconsistent with common sense, on the facts before us, to construe the Act so as to exclude appellant from its coverage. *Kaczorowski, supra,* 309 Md. at 516, 525 A.2d 628.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.