650 A.2d 296

**Kenneth M. GOODWICH, et al.**

v.

**Paul W. NOLAN, et al.**

**No. 460, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Dec. 5, 1994.

500

Timothy L. Mullin, Jr. (John E. McCann, Jr. and Miles & Stockbridge, on the brief), Baltimore, for appellants.

Daniel J. O'Brien, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Raymond Bevans, Asst. Atty. Gen., on the brief), Baltimore, for appellee, Nolan and Tabler.

C. Holly Buckley (Joanne L. Suder and Suder & Suder, on the brief), Baltimore, for appellees Brooks, et al.

Argued before ALPERT, CATHELL and MURPHY, JJ.

ALPERT, Judge.

Appellants, Kenneth M. Goodwich, M.D., and Kenneth M. Goodwich, M.D., P.A., appeal the decision of the Circuit Court for Baltimore City dismissing their Verified Complaint Seeking Writ of Mandamus. In the complaint, appellants sought judicial review of an order of the Health Claims Arbitration

Office compelling production of deposition testimony taken in an ongoing arbitration proceeding before the HCAO. Appellants present three questions for our review, which we have recast slightly as follows:

> I. Whether the circuit court abused its discretion in denying appellants' Verified Complaint Seeking Writ of Mandamus, thereby foreclosing the only available avenue for judicial review of an HCAO order compelling production of statutorily privileged peer review information?

> II. Whether the circuit court abused its discretion by failing to issue a writ of mandamus prohibiting the HCAO's enforcement of an arbitrary order, erroneously compelling the production of privileged medical peer review information in violation of section 14–501(d) of the Health Occupations Article?

> III. Whether joinder of the HCAO director as a named defendant in an action seeking a writ of mandamus prohibiting the enforcement of a panel chair's order during an ongoing HCAO proceeding was proper?

## Facts and Proceedings

The underlying action from which this appeal arises is a medical malpractice claim brought in the Health Claims Arbitration Office by Sharon Brooks, individually and as parent, guardian, and next friend of her son, Jamaal Brooks, against Kenneth M. Goodwich (Dr. Goodwich), M.D., Kenneth M. Goodwich, M.D., P.A. (Goodwich, P.A.), Sinai Hospital of Baltimore, Inc. (Sinai Hospital), Health Care Corporation of the Mid–Atlantic (Carefirst), and Potomac Physicians, P.A. (Potomac). Jamaal was born with severe brain damage in December, 1988, allegedly as a result of negligent obstetrical and surgical treatment rendered by Dr. Goodwich. In addition to primary claims of liability against Dr. Goodwich, Ms. Brooks also brought vicarious or corporate liability claims against Goodwich, P.A., Sinai Hospital, Carefirst, and Potomac, on

theories of negligent supervision and credentialing. In orders dated April 19, 1993, and October 12, 1993, the panel chair assigned to the case, appellee Paul W. Nolan, Esquire (Nolan), bifurcated the claims of corporate liability from those brought solely against Dr. Goodwich.[1]

During discovery in the HCAO proceeding, Ms. Brooks noted the deposition of Dr. Goodwich. At the deposition, Ms. Brooks' attorney posed a series of questions to Dr. Goodwich regarding, *inter alia*, alleged disciplinary restrictions placed upon his staff privileges at Sinai Hospital; alleged disputes with other patients and former partners regarding patient communication problems; and alleged revocation, suspension, or other curtailment of his privileges to practice medicine.[2] At the instruction of his attorney, Dr. Goodwich refused to answer any of the questions on the ground that the medical peer review privilege set forth in section 14–501(d) of the Health Occupations Article protected such information. The relevant portion of 14–501(d)(1) relied upon by Dr. Goodwich provides:

[T]he proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action arising out of matters that are being reviewed and evaluated by the medical review committee.

---

1. On April 19, 1993, Nolan bifurcated the claims of vicarious liability which, at that time, had been brought only against Sinai Hospital. After Carefirst and Potomac were joined in the action, on October 12, 1993, Nolan bifurcated Ms. Brooks' claims against them as well.

2. Other questions posed to Dr. Goodwich included whether he was ever required by Sinai Hospital to obtain second opinions; whether he was credentialed by Carefirst; whether he ever told Carefirst that he was required to obtain second opinions; whether he was discharged from Sinai Hospital's HMO; whether his medical license was revoked, suspended, or curtailed when Ms. Brooks was his patient; whether Sinai Hospital ever suspended his privileges for failure to complete charts on time; whether he ever reviewed patient admission data with administrators from Sinai; and whether he ever discussed his affiliation at Sinai with a former president of the hospital.

Md.Code Ann., Health Occ. § 14–501(d)(1) (1991).[3]

Ms. Brooks' attorney pursued similar lines of questioning at the depositions of two former employees of Sinai Hospital, Rebecca Brown, R.N., and Mary Anne Lathrop, M.D. They also were instructed by Dr. Goodwich's attorney not to answer on the ground that the medical peer review privilege applied.[4]

These claims of privilege prompted Ms. Brooks to file with the HCAO a Motion to Compel. After reviewing the extensive briefs filed by the parties, the panel chair, appellee Nolan, issued a Memorandum and Order on June 22, 1993, granting Ms. Brooks's motion. In the order, Mr. Nolan found that the peer review privilege was not applicable because the information sought by Ms. Brooks at the depositions was not the "records" or "files" of a medical review committee, nor was the information a "proceeding" under 14–501(d). Mr. Nolan found persuasive a Rhode Island case, *Moretti v. Lowe*, 592 A.2d 855 (R.I.1991). He was also careful to note, however, that while the information sought was *discoverable*, his ruling was not meant to "imply that such evidence will be *admissible* at the

---

**3.** At Sinai Hospital, like many hospitals, all decisions pertaining to the revocation, suspension or extension of a physician's staff privileges are made by a "medical review committee," which is defined in § 14–501 as

[a] committee of the medical staff or other committee, including any risk management, credentialing, or utilization review committee established in accordance with § 19–319 of the Health General Article, of a hospital, related institution, or alternative health care system, if the governing board of the hospital, related institution or alternative health care system forms and approves the committee or approves the written bylaws under which the committee operates....

Md.Code Ann., Health Occ. § 14–501(b)(5) (1991).

**4.** Rebecca Brown, an obstetrics technician who had worked with Dr. Goodwich for many years, and Dr. Lathrop were involved in Ms. Brooks's care at Sinai Hospital. The questions posed to them included: whether they knew if Dr. Goodwich was required to get a second opinion; whether Dr. Goodwich's privileges were suspended or curtailed in any way while he was treating Ms. Brooks; whether they or other staff at Sinai had trouble getting a hold of Dr. Goodwich or getting him to return calls in December, 1988; and whether they were ever present at meetings where employees of Sinai voiced complaints about Dr. Goodwich and his management of patients.

hearing on this matter." (emphasis added). Dr. Goodwich subsequently filed a Motion for Reconsideration, which was denied by the panel chair on October 12, 1993, again with the proviso that the ruling was not to be interpreted as implying that the information sought would be admissible at the final hearing on the merits.[5] When appellants failed to answer the deposition questions as ordered by Mr. Nolan, Ms. Brooks filed another Motion to Compel, to order Dr. Goodwich to appear at a supplemental deposition. In response, Dr. Goodwich requested a protective order staying all discovery while he pursued mandamus relief in the circuit court. Mr. Nolan obliged, and on November 15, 1993, ordered that all discovery on the issue be stayed for a period of sixty days in order to permit Dr. Goodwich to file a complaint for writ of mandamus in the circuit court.

On November 17, 1993, Dr. Goodwich filed a Verified Complaint Seeking Writ of Mandamus against Mr. Nolan and Walter R. Tabler, Director of the HCAO, in the Circuit Court for Baltimore City. The complaint requested the court to prohibit Messrs. Nolan and Tabler from enforcing the HCAO order compelling Dr. Goodwich and others to respond to the questions posed at their depositions. Appellees Nolan and Tabler filed a Motion to Dismiss Dr. Goodwich's complaint, which the circuit court granted on January 11, 1994. In its Order, the court adopted the reasons set forth in appellees' motion to dismiss, namely that a writ of mandamus will not lie to direct a party to exercise a judgment that is discretionary in nature, that Dr. Goodwich's complaint was interlocutory in

---

5. Dr. Goodwich's Motion for Reconsideration was filed after Sinai Hospital settled with Ms. Brooks and was dismissed from the case. At this time, Carefirst and Potomac had not yet been joined in the case. Dr. Goodwich's Motion for Reconsideration argued that Sinai Hospital's dismissal rendered all claims of corporate liability moot and, therefore, there was no need for the information requested at the depositions. As appellees note, however, Goodwich, P.A. was still a party at this time and the claims against it included those founded upon theories of corporate liability. In any event, after this Motion for Reconsideration was filed, Ms. Brooks filed a Second Amended Statement of Claim that added Carefirst and Potomac as parties.

nature, and that an adequate statutory remedy existed *after* a final award was made by the HCAO.

Appellants appeal the dismissal of the complaint for writ of mandamus, contending that the information sought by appellees is privileged under the express terms of 14–501(d). They contend that a writ of mandamus, though interlocutory in nature, is the only available means to prevent disclosure of the information to the general public. Post-arbitration procedures for vacating a final award, appellants argue, are inadequate to prevent disclosure because by that time the information will have already been released, in contradiction of the privilege itself. Appellants conclude that appellees' order compelling disclosure of the information should be immediately reviewable in the circuit court in order to protect adequately the information and promote the purposes of 14–501(d).

## I.

### a. Mandamus

■ A writ of mandamus generally seeks "to compel an inferior tribunal, a public official or an administrative agency to perform a function, or some particular duty which in its nature is imperative...." *Dorchester Gen. Hosp. v. Sober,* 79 Md.App. 110, 115, 555 A.2d 1074 (1989). Mandamus is an "extraordinary remedy," reserved only for those instances "where there is no other available procedure for obtaining review, or where the action complained of is arbitrary and capricious." *Weidig v. Tabler,* 81 Md.App. 488, 491, 568 A.2d 868 (1990). It will not lie where there exists an adequate remedy to provide the relief requested, *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 718, 337 A.2d 77 (1975), nor will it lie where the act or decision being reviewed is discretionary in nature or involves the exercise of judgment. *Bovey v. Exec. Dir., HCAO,* 292 Md. 640, 646, 441 A.2d 333 (1982). The party applying for mandamus relief must demonstrate a clear legal right to have the performance of a duty compelled. *Dorchester Gen. Hosp.,* 79 Md.App. at 115, 555 A.2d 1074. A reviewing court should not disturb the dismissal of a writ of manda-

mus unless there has been a clear abuse of discretion on the part of the trial court. *Weidig,* 81 Md.App. at 491, 568 A.2d 868.

In the case at bar, these threshold requirements have not been met. We hold, therefore, that the circuit court did not abuse its discretion in granting appellees' motion to dismiss the complaint for writ of mandamus.

### b. Discretionary Nature of Discovery Order

Mandamus relief is not appropriate in this case because Mr. Nolan's decision to issue the discovery order was discretionary in nature rather than ministerial. *Bovey,* 292 Md. at 646, 441 A.2d 333. Ruling on discovery matters involves the exercise of discretion and independent judgment on the part of a trial judge or a panel chairperson in a health claims arbitration proceeding. *See, Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768 (1961) (holding that "discovery rules are to be liberally construed" and those "who are primarily called upon to administer said rules, are vested with a reasonable, sound discretion in applying them"). The discretionary nature of Mr. Nolan's ruling is evidenced most clearly perhaps by the fact that his decision involved an unsettled area of the law regarding the scope of the peer review privilege. Both parties acknowledge that the issues presented in this case have not been resolved by the Maryland courts. Extensive briefs were filed by the parties with Mr. Nolan, whose ruling indicates that he carefully considered those cases in other states that have addressed the issue. Clearly, this was not a purely administrative or ministerial function performed by Mr. Nolan. He brought "his sound judgment and discretion to bear in this process." *Bovey,* 292 Md. at 649, 441 A.2d 333. As this Court cautioned in *Dorchester Gen. Hosp.,* 79 Md.App. at 118, 555 A.2d 1074, "[t]o allow such a use of [a writ of mandamus] with respect to a matter within the panel chairman's discretion circumvents the rule prohibiting appeals from certain types of interlocutory orders, and ... would open the door to unnecessary judicial interruption."

### c. Remedies Other Than Mandamus Available to Appellants

 Contrary to appellants' contentions, a writ of mandamus is not the only remedy available to obtain judicial review of the order compelling Dr. Goodwich to respond to the deposition questions posed to him. Section 3–2A–06 of the Health Claims Arbitration Act permits a party to file an action in the circuit court *after* the arbitration proceeding is concluded to modify or vacate the final award of the HCAO. Md. Code Ann., Cts. & Jud.Proc. § 3–2A–06 (Supp.1994). This is the ordinary means of obtaining judicial review of a decision by the HCAO.[6] The appellate courts in this state have held in other circumstances that a writ of mandamus may not be issued by a circuit court during ongoing HCAO proceedings on the basis that an adequate remedy is provided for in section 3–2A–06.

In *Dorchester Gen. Hosp.*, 79 Md.App. at 114, 555 A.2d 1074, for example, the defendants in a HCAO matter filed a complaint for writ of mandamus with the Circuit Court for Dorchester County requesting the court to order a change of venue in the arbitration after Dennis Sober, the panel chair, had refused to do so. The trial judge denied the complaint for writ, even though he recognized that once the hearing was held whatever harm was caused by his refusal to order removal of the case was already done. *Id.* This Court

---

**6.** Section 3–224(b) of the Courts and Judicial Proceedings Article, which also applies in HCAO matters, more generally provides that an arbitration award may be vacated on several grounds including:

> (1) An award was procured by corruption, fraud, or other undue means;
>
> (2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;
>
> (3) The arbitrators exceed their powers;
>
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of the party....

Md.Code Ann., Cts. & Jud.Proc. § 3–224(b) (1989).

affirmed, holding that the defendants had "a right to seek review of the venue decision upon final disposition of [the arbitration proceeding], pursuant to [section 3–2A–06]. . . ." *Id.* at 118, 555 A.2d 1074.

Similarly, in *Weidig*, 81 Md.App. at 491, 568 A.2d 868, a medical malpractice claim was brought against a party who contended that he was not a "health care provider" as defined in the Health Claims Arbitration Act and that he could not, therefore, be compelled to submit to arbitration. When his motion for summary judgment was denied by the panel chair, he filed a complaint for writ of mandamus to prohibit the HCAO from exercising jurisdiction over him. The circuit court denied his complaint for writ and we affirmed, again holding that the appellant could obtain judicial review of the denial of his motion for summary judgment *after* the arbitration proceedings were concluded. *Id.*

Also, in *Bovey*, 292 Md. at 641, 441 A.2d 333, the claimants in a HCAO matter sought a writ of mandamus in the Circuit Court for Montgomery County to compel the director of the HCAO to ask potential members of the arbitration panel whether they were stockholders in or insured by the same insurance company as the defendant health care provider. The court dismissed the claimants' complaint for writ of mandamus. *Id.* Relying on the availability of "other avenues of potential relief" under section 3–2A–06, the Court of Appeals affirmed the dismissal of the complaint for writ. *Id.* at 649, 441 A.2d 333.

These cases demonstrate that the "extraordinary remedy" of a writ of mandamus will not lie while an arbitration proceeding before the HCAO is still pending. A party aggrieved by a decision of the HCAO may seek review in the circuit court only *after* the HCAO has issued a final award. Section 3–2A–06 provides an "adequate remedy" for appellants in this case.

█ Appellants argue, however, that if a writ of mandamus is not issued, the confidentiality of the privileged peer review

information will be forever destroyed.[7] Disclosure of the peer review information during discovery, they contend, will render any subsequent post-arbitration remedy insufficient to redress the wrong that will already have occurred.

This argument is grounded on two assumptions. First, it assumes that the information sought by Ms. Brooks is, in fact, protected under the privilege set forth in 14–501(d).[8] Second, it incorrectly assumes that enforcement of the HCAO order will inexorably lead to the disclosure of the information to the public, and thereby undermine the privilege. This is not necessarily the case. There are other measures that may be taken by appellants during discovery before the HCAO to prevent disclosure of the peer review information. Pursuant to section 3–2A–05(b)(2) of the Health Claims Arbitration Act, "the provisions of the Maryland Rules relating to discovery are applicable to proceedings" before the HCAO. Md.Code Ann., § 3–2A–05(b)(2) (1989).

Maryland Rule 2–403(a) is therefore applicable in arbitration proceedings. This rule permits a party to file a motion for protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Appellants in the present case could file such a motion with the HCAO and request "that certain matters not be inquired into or that the scope of the discovery be limited to certain matters" or "that discovery be conducted with no one present except persons designated by the court." Maryland Rule 2–403(a)(5) & (a)(6).[9] In addition, appellants could request pursuant to 2–403(a)(7), "that a deposition, after being

---

**7.** For instance, they assert that Ms. Brooks will be able "to use the information by attaching excerpts from the various depositions to pretrial motions with the HCAO, thereby rendering the peer review information part of the public record." (Footnote omitted).

**8.** This decision shall be left for another day.

**9.** A motion for protective order was filed by appellants. This motion, however, requested that the HCAO stay the proceedings while appellants' petition for writ of mandamus was pending. It did not, itself, seek protection from the discovery requests of Ms. Brooks.

sealed, be opened only by order of the court." Appellants have availed themselves of none of these alternatives prior to filing the complaint for writ of mandamus in the circuit court.

Moreover, it is significant that the order issued by Mr. Nolan was limited to compelling appellants to disclose the peer review information in discovery, and did not purport to render the information admissible when the arbitration hearing is ultimately held. Mr. Nolan clearly stated in the order that his ruling was not meant to "imply that such evidence will be admissible at the hearing on this matter." The admissibility of the information sought by Ms. Brooks will be determined in light of the normal rules of relevancy and prejudice.

### d. The Collateral Order Doctrine

■ Since the writ sought by appellants in this matter is interlocutory in nature, our decision must also be guided by the three requirements of the "collateral order doctrine" first set forth by the Supreme Court of the United States in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The doctrine as adopted by this Court requires that: "(1) the order finally disposed of a matter that was (2) separable from and collateral to rights asserted in the action, and (3) there was a risk of important loss if immediate review were unavailable." *Dorchester Gen. Hosp.*, 79 Md.App. at 117, 555 A.2d 1074.

In our view, for similar reasons as those outlined above, the requirements of the collateral order doctrine have not been met in this case. First, the discovery order issued by Mr. Nolan has not definitively resolved any aspect of the arbitration proceeding. Again, the order was limited to compelling disclosure of the peer review information for purposes of discovery only, and did not compel admissibility of the information at the arbitration hearing itself. Second, the subject matter of appellants' "appeal" is not collateral to the rights asserted in the arbitration proceeding. As appellees correctly argue, the subject matter of the appeal in this case is "inextricably bound up in the merits of the underlying case." The peer review information sought by Ms. Brooks relates directly

to her claims of negligent supervision and credentialing that she has brought against Goodwich, P.A., Carefirst, and Potomac.[10] Finally, we do not agree with appellants that there is a "risk of important loss" if immediate review of the discovery order were not available.[11] As discussed previously, Dr. Goodwich could obtain a comprehensive protective order limiting the use and disclosure of the information, or he could obtain a seal order from the HCAO. He may also object to the admissibility of the information at the arbitration hearing on the grounds of privilege or relevance.

The Court of Appeals has continually held that discovery orders, issued in circumstances similar to those in the case at bar, are interlocutory in nature and, therefore, not appealable. *See, Electronic Data Sys. Fed. Corp. v. Westmoreland Assocs., Inc.*, 311 Md. 555, 556, 536 A.2d 662 (1988) (order by trial court compelling production of documents not appealable because it was "subject to effective review on appeal from a final judgment"); *Price v. Orrison*, 261 Md. 8, 9, 273 A.2d 183 (1971) (order denying motions to prevent taking of depositions was interlocutory and not appealable); *Montgomery County*

---

**10.** Appellants contend that because the arbitration matter has been bifurcated (with Ms. Brooks' claims of primary negligence against Dr. Goodwich proceeding first, then her claims of negligent supervision against the remaining defendants proceeding thereafter) none of the requested peer review information is relevant to Ms. Brooks' claims of primary negligence against Dr. Goodwich and will not be admissible during the first proceeding against him alone. We cannot speculate on the admissibility of the answers Dr. Goodwich refused to give to the numerous questions posed to him at his deposition. As appellees point out, however, Dr. Goodwich indicated in his answers to interrogatories and in correspondence to counsel for Ms. Brooks that he intends to testify on his own behalf as an expert and apparently did testify in this capacity at his deposition. Dr. Goodwich is, therefore, subject to cross-examination on his qualifications as an expert witness, which may include questions pertaining to his staff privileges, past disciplinary problems, and general competence.

**11.** In addition, we do not agree with appellants' contention that disclosure of the peer review information during discovery is tantamount to disclosing this information directly to the general public because under the modern discovery rules, it is not necessary for parties to file their discovery material with the court. Md.Rule 2–401(c)(2).

*Council v. Kaslow*, 235 Md. 45, 53, 200 A.2d 184 (1964) (order permitting the taking of pre-trial depositions is interlocutory); *Alford v. Comm'r of Motor Vehicles*, 227 Md. 45, 47, 175 A.2d 23 (1961) (*per curiam*) (order granting motion to strike deposition on ground of privilege not appealable because order "does not amount to a final determination"). In *Alford*, 227 Md. at 47, 175 A.2d 23, the Court stated:

> Ordinarily, an order granting or denying discovery does not finally determine the rights of any party and, therefore, no appeal lies from such an order unless it is tantamount to a denial of the means of further prosecuting the case.... If, after the case is tried, there should be an appeal from the final judgment, these interlocutory orders could then be brought up for review.

(citations omitted).

For the foregoing reasons, we hold that an order of the Health Claims Arbitration Office requiring a health care provider to respond to questions posed at deposition is not immediately appealable by means of a complaint for writ of mandamus. We need not address, therefore, appellants' claim that the information sought by Ms. Brooks at Dr. Goodwich's deposition would be protected under the peer review privilege.

## II.

Appellants also argue that appellee, Mr. Tabler, who is a former Director of the HCAO, was properly joined as a named defendant in the complaint for writ of mandamus.[12] Because we have held that the trial court properly dismissed appellants' complaint for writ of mandamus on other grounds, we

___

12. Appellants apparently raise this issue on appeal because in appellees' motion to dismiss, it was argued that the verified complaint seeking writ of mandamus should be dismissed as to Mr. Tabler on the grounds that Mr. Tabler, as Director of the HCAO, has no control over any decision-making of the panel chair, Mr. Nolan. The circuit court's order from which appellants appeal granted appellees' motion to dismiss "for reasons set forth in [the] motion." This issue is, therefore, before us on appeal.

need not address the propriety of naming Mr. Tabler as a party in this proceeding.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.